# THE HAGERSTOWN BREWING COMPANY *vs.* GEORGE E. GATES.

*Foreign corporations and non-residents:* Suits by—. Acts of
1908, *Ch.* 240, *and Ch.* 309.  *Corporations: contracts;*
*agent's authority; pleading; defence of ultra vires.*
*Guaranty: contracts of—; debt of another;*
*implied power of corporation.  By-laws*
*of corporations.  Exceptions: must*
*be by separate bills of—.*

Under Ch. 240 of the Act of 1908 the right of a non-resident
to sue a foreign corporation in the Courts of this State is no
longer confined to cases in which the causes of action has
arisen, or the subject matter is situated, in this State.  This
act was not repealed or modified by Ch. 309 of the Acts of
1908, which provided that any corporation now chartered by
the laws of this State, transacting business therein, shall be
deemed to hold and use franchises within this State, and shall
be liable to suit in any of its Courts on dealings or trans-.
actions therein, and shall also be liable to suit in any Court
in this State on any controversy which may arise between
such corporation and any resident of this State.      p. 354

No agent of a corporation has authority to make an *ultra vires*
contract.                                         p. 356

In a declaration against a corporation on a contract entered
into on its behalf by an agent of a corporation, an averment
that the contract was executed by the defendant through its
agent or servant, while acting within the scope of his author-
ity, amounts in substance to an allegation that the defendant
corporation had the power to enter into such a contract.
p. 356

Where in an action *ex contractu* against a corporation, the
contract in question is of a kind that is not outside of the
corporation's powers, but is such as may be made by it
under certain conditions, it will be presumed, in the absence

of proof to the contrary, that those conditions existed, and that the contract was within its powers.       p. 356

For the purpose of promoting sales of the products of a brewing company, and in consideration of a saloon keeper's agreement to buy his beer from the corporation, the president and general manager of a brewing company, as such president, endorsed the notes which the saloon keeper gave to the vendor for the purchase of the saloon property and business; the entire management and direction of the brewing company's business was confided by the directors to its president and general manager. *Held,* that under the circumstances the contract of guaranty was within the scope of the authority of the president and general manager and the guaranty was valid and binding upon the corporation.      pp. 360-361

Strangers to a corporation are not bound by the by-laws or private instructions of a corporation limiting the apparent authority of its agents, of which they have no knowledge.

          p. 361

Where a bill of exceptions includes more than one exception to a ruling on the evidence, it will not be considered by the Court of Appeals.       p. 361

Evidence adduced on cross-examination is not admissible where there was no reference to the matter brought out on examination in chief.       p. 361

*Decided January 31st, 1912.*

Appeal from the Circuit Court for Alleghany County (HENDERSON, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Alexander R. Hagner* and *Albert A. Doub,* for the appellant.

*A. C. Strite* and *Frank G. Wagaman* (with whom was *Ferdinand Williams* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered against the Hagerstown Brewing Company, a corporation (appellant), on two contracts executed in its name by its president and general manager, endorsed on and guaranteeing the payment of two single bills of one Kurtz in favor of the appellee, each for the sum of five hundred dollars, and both dated the 18th of November, 1907; one payable twenty-seven months after date and the other payable thirty months after date.

The case was instituted in the Circuit Court for Washington County, and the declaration contained five of the common counts and four special counts. The sixth count charges that the plaintiff was the owner of a stock of goods, fixtures, etc., and that Kurtz desired to purchase the same and to give in part payment therefor his promissory note under seal or single bill for five hundred dollars, dated November 18th, 1907, and payable twenty-seven months after date, and that the defendant, "by its servants and agents, while acting within the scope of their authority, promised and agreed with" the plaintiff that if the plaintiff would sell and deliver said stock of goods, fixtures, etc., to Kurtz it would pay said single bill "at its maturity;" that the plaintiff, in consideration of the defendant's promise, sold and delivered said stock of goods, fixtures, etc., to Kurtz, but Kurtz did not pay said single bill, and that the defendant had due notice of that fact but refused to pay the same when requested to do so.

The seventh count makes the same charge in reference to the single bill payable thirty months after date, and the eighth count alleges that the plaintiff was the owner of the stock of goods, etc., and that Kurtz desired to purchase the same and to give in part payment therefor his single bill in the following words:

"JOHNSTOWN, PA., November 18th, 1907.

Twenty-seven months after date we promise to pay to the order of George E. Gates, five hundred dollars, without defalcation, value received with interest from maturity, at Dollar Deposit Bank of Johnstown. And further, we do hereby empower any attorney of any Court of record within the United States or elsewhere to appear for me and after one or more declarations filed, confess judgment against us as of any term for the above sum, with costs of suit and attorney's commissions of six per cent., for collection, and release of all errors, and without stay of execution, and inquisition and extension upon any levy on real estate is hereby waived and condemnation agreed to and the exemption of personal property from levy and sale on any execution hereon is also expressly waived and no benefit of exemption is claimed under and by virtue of any exemption law now in force or which may hereafter be passed.

Witness our hands and seals,

STEVE KURTZ (Seal)"

That the defendant, by its agents and servants, while acting within the scope of their authority, had "previously written on the back" of said single bill as follows:

"For value received we hereby guarantee the payment of this note at maturity.

(Signed) HAGERSTOWN BREW'G CO.,
By PHILIP HERMANN, Pres."

And the plaintiff accepted the single bill with said endorsement thereon in part payment for his stock of goods, etc., and delivered said goods to Kurtz, but Kurtz did not pay said single bill, and that the defendant, after due notice thereof, has also failed to pay the amount due thereon. The averments of the ninth count are the same in reference to the single bill payable thirty months after date.

The defendant filed two pleas, first, that it never promised as alleged, and, second, that it never was indebted as alleged, and demurred to the sixth, seventh, eighth and ninth counts of the declaration. The plaintiff joined issue on

the pleas, and on the 6th of October, 1910, upon the sug-
gestion and affidavit of the defendant, the case was removed
to the Circuit Court for Allegany County. That Court
overruled the demurrers to the sixth, seventh, eighth and
ninth counts of the *narr.*, and on the same day the defendant
filed its third and fourth pleas to those counts and its fifth
plea to the declaration. By the third plea the defendant
says that "it was incorporated in the year 1898 under the
provisions of the general laws of the State of Delaware for
the purpose of brewing, manufacturing and making beer
and other kinds of malt liquors and for the sale, transporta-
tion or other disposition of the products of said business,
and these are the only powers given to it by its certificate
of incorporation and that it has not the power to guarantee
the obligations of other persons except for a valuable con-
sideration moving to the said defendant, and that the said
alleged promise or guarantee of the said defendant on
said promissory note was wholly without consideration and
is *ultra vires* on the part of the defendant and void and
unenforceable by a suit against the defendant." The fourth
plea alleges that the endorsements were made without the
authority of the defendant and have not been ratified by
it, and the fifth plea, which on motion of the plaintiff was
not received, says that the plaintiff "is and has been a
resident of the State of Pennsylvania since before the execu-
tion of the alleged promissory notes sued on and endorse-
ments thereon, and that the alleged cause of action arose
in the State of Pennsylvania, and did not arise in the State
of Maryland, and the subject of the action is not and has
never been situated in this State, and that the defendant
is and has been a non-resident of the State of Maryland
since before the execution of the alleged promissory notes
sued on and endorsements thereon, and that both plaintiff
and defendant are non-residents of the State of Maryland,
and that the plaintiff has no right of action in this Court."
The plaintiff joined issue on the fourth plea, and filed
six replications to the third plea. The Court below sus-

tained a demurrer to the first and fifth replications, and issue was joined on the second, third, fourth and sixth replications, which deny the averments of the plea that the promises of the defendant were made without consideration and were *ultra vires,* and allege that they were made for valuable considerations "moving to the defendant," and that the certificate of incorporation did give the defendant power to guarantee the obligation of others, etc.

During the trial of the case the defendant reserved seven exceptions, the first six of which relate to rulings on the evidence, and the seventh to the granting of the plaintiff's first, third and fifth prayers, and the rejection of the defendant's first, second, third, fifth, sixth, ninth, tenth and eleventh prayers and a modification of its eighth prayer.

The defendant's fifth prayer presents its contention that a non-resident of this State can not sue a foreign corporation in the Courts of this State on a contract made in some other State. That was undoubtedly the law prior to the Act of 1908, Chapter 240, except where the subject of the action was situated in this State, but section 67 of that act declares that "Any person or corporation, whether a resident or a non-resident of this State, may sue any foreign corporation regularly during business or regularly exercising any of its franchises therein for any cause of action." This language is very broad and clear, and the right of a non-resident to sue a foreign corporation in the Courts of this State is no longer confined to cases in which "the cause of action has arisen, or the subject of the action shall be situated in this State," as was the case under section 411 of Article 23 of the Code, which was expressly repealed by the Act of 1908. The appellant insists, however, that section 67 of Chapter 240 of the Acts of 1908 was repealed or modified by the later Act of 1908, Chapter 309, which provides that "Any corporation now chartered by the laws of this State, which shall transact business therein, shall be deemed to hold and exercise franchises within this State, and shall be liable to suit in any of the Courts of this State on any dealings or trans-

actions therein, and also shall be liable to suit in any of the Courts of this State, on any controversy which may arise between such corporation and any resident of this State." This act is practically section 409 of Article 23 of the Code of 1904 with the additional provision for controversies between such corporations and residents of this State. It was never suggested that section 409 of the Code so modified the provisions of section 411 as to confine the jurisdiction of our Courts to suits against non-resident corporations on transactions in the State, on the contrary it was repeatedly held that, under section 411, they had jurisdiction also in cases where "the subject of the action" was situated in this State (*Cromwell et al.* v. *Royal Canadian Ins. Co.,* 49 Md. 382; *Universal Life Ins. Co.* v. *Bachus,* 51 Md. 31), and there is no more reason for holding that Chapter 309 of the Act of 1908 repeals or modifies section 67 of Chapter 240 than that section 411 of the Code was restricted or limited by section 409. Chapter 309 does not expressly repeal Chapter 240, and if allowed the effect contended for by the appellant it would take away the jurisdiction of our Courts in cases of suits by non-residents against foreign corporations where the subject of the action is situated in this State, which was expressly provided for in section 411 of the Code, and included in the terms of Chapter 240. The argument of counsel for the appellant that to allow corporations regularly doing business in this State to be sued by non-residents on any cause of action would impose great additional labor upon the Courts and extra burdens upon the taxpayers of this State would be entitled to some weight if the terms or meaning of the act were obscure or uncertain, but here the language is clear and does not admit of any doubt as to its meaning. It expressly provides that a foreign corporation regularly doing business or exercising any of its franchises in this State may be sued by any person or corporation, *resident* or *non-resident,* on *any* cause of action, and the evidence in this case shows that the appellant was "regularly doing business" in this State, and had an office, if not its

main office and chief place of business, in Hagerstown. Moreover, as the Act of 1908 has been in force for nearly four years, and as this is the first time the question has been raised in this Court, it would seem that the apprehension of the appellant are not well founded.

Plaintiff's third prayer instructed the jury that there was "no legally sufficient evidence" in the case to show that the endorsement of the single bills sued on was beyond the corporate powers of the appellant. The certificate of incorporation was not offered in evidence, and the ground of the demurrer to the sixth, seventh, eighth and ninth counts of the declaration, and of the appellant's objection to this prayer is that it was incumbent upon the plaintiff to allege and show that the contract sued on was within the corporate powers of the appellant. It is said in 5 *Ency. of P. & P.* 95: "If the defendant wishes to interpose the defense of *ultra vires* in an action by a corporation against him, he should specially plead it. And, in an action against a corporation, the plaintiff need not set out in his complaint or declaration the capacity of the corporation to make the contract sued on. Where the defense of *ultra vires* is allowable to a corporation, the corporation must specially plead it." In 10 *Cyc.* 1155, JUDGE SEYMOUR D. THOMPSON says: "A general presumption of right-acting attends corporations, the effect of which is to place the burden of proving that a contract made or an act done by a corporation was *ultra vires* upon him who alleges that fact as the foundation of his action or defense." He says further: "Aside from casting the burden of proof upon a party setting up the want of power this presumption operates in several ways. If the powers possessed by the particular corporation do not appear at all, and are not judicially noticed by the Court, then it operates within certain limits to carry with it the general presumption that the act or contract which is challenged is within its powers. If it has the power to do the given act, or to make a contract of a given nature under prescribed conditions, then the principle operates to create the

presumption that these conditions existed in the particular instance. * * * If the corporation itself seeks to avoid its contract on the ground that it was *ultra vires* this presumption puts upon it the burden of showing that its articles of incorporation did not authorize the contract." In the case of *Railway Co.* v. *McCarthy,* 96 U. S. 258, it is said: "When a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made, it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers." See also 3 *Ency. of Ev.* 633, note 12; *Star Brick Co.* v. *Ridsdale et al.,* 36 N. J. L. 229; *Elkins* v. *Camden, Etc., R. Co. et al.,* 36 N. J. Eq. 241; *Rider Life Raft Co.* v. *Roach,* 97 N. Y. 378; 1 *Morawetz on Private Corp.,* section 324. But in this case we are not required to go to the extent of the rule thus broadly stated, either in disposing of the demurrer or the objection to the prayer, and we must not be understood as holding that in every case, regardless of the nature of the contract or the character of the corporation, the act of the corporation relied on will be presumed to be within its corporate powers. In each of the counts demurred to the plaintiff alleged that the contract declared on was executed by the defendant by its agent and servant while acting within the scope of his authority. As no agent of a corporation is authorized to make an *ultra vires* contract, these averments were in effect that the defendant had the power to make the contract and that it was executed by its duly authorized agent. The defendant's third plea admits that it was authorized to guarantee the obligations of other persons "for a valuable consideration moving to" it, and where it is admitted that contracts like the one in question are not outside of the powers of the corporation, and that they may be made by it under certain conditions, it will be presumed, in the absence of proof to the contrary, that those conditions existed. Besides, in this case, all the evidence tends to show that the single bills were endorsed by the

defendant in consideration of the promise of Kurtz to sell its beer.

The evidence in the case further shows, or tends to show, that the plaintiff was the owner of a wholesale liquor business in South Fork, Pennsylvania, and that he agreed to sell the same to Steve Kurtz for $7,700 and to take in payment therefor twenty-five hundred dollars cash and ten single bills, nine for five hundred dollars each and one for seven hundred dollars, to be signed and sealed by Kurtz and endorsed by the Hagerstown Brewing Company (appellant) guaranteeing their payment; that the appellant, by its president and general manager, in consideration of the promise of Kurtz to sell the beer of the appellant, agreed to and did guarantee the payment of the single bills, all of which were paid by Kurtz as they became due, except the two sued on in this case, which Kurtz and the appellant have failed and refused to pay; that Kurtz continued in business for about eight months, and during seven months of that time purchased beer from the appellant at the rate of about one car-load every two weeks; that the directors of the appellant did not meet more than once a year, and that Philip Hermann, its president and general manager, had full charge of all the business of the company.

By plaintiff's first prayer the jury were told that if they found from the evidence that Philip Hermann was the president and general manager of the defendant and that while so acting he executed the contracts endorsed on and guaranteeing the payment of the single bills offered in evidence, and further found that in consideration of the execution of said contracts Kurtz promised to sell no other beer than that manufactured by the defendant, and further found that the plaintiff parted with his property upon the faith of said endorsements, then their verdict should be for the plaintiff, unless the jury further found that Hermann had no authority to execute such contracts, and that there was no evidence in the case legally sufficient to show such want of authority. Plaintiff's fifth prayer instructed the

jury that if they found that the defendant's business, at the time of the endorsement of the single bill sued on, was the manufacture and sale of beer; that Hermann was the general manager and president of the defendant, and that it was his duty as such to sell defendant's beer; that said Hermann endorsed defendant's name on said single bills for the purpose of promoting the sale of defendant's beer, and did thereby effect the sale of large quantities of its beer, and that said single bills were still overdue and unpaid their verdict should be for the plaintiff.

In addition to the contentions of the appellant already referred to, it urges as further objections to these prayers, first, that the burden was on the plaintiff and that he failed to show that Hermann was authorized to bind the appellant by the endorsements; and, second, that, assuming that there was evidence tending to establish Hermann's authority, the prayers should have left it to the jury to find that he was authorized to make the contracts.

It is stated in the defendant's third plea that the appellant was incorporated under the "General Laws of the State of Delaware for the purpose of brewing, manufacturing and making beer and other kinds of malt liquor and for the sale, transportation or other disposition of the products of said business," and that it had the power to guarantee the obligations of other persons "for a valuable consideration moving to" it, and it is not, therefore, necessary to consider the question whether a brewing company is authorized to guarantee the payment of the obligations of a customer in order to promote the sale of its products for it is admitted, as we have said, by the plea that the appellant had the power to do so for a valuable consideration. The only question to be determined is whether where such a contract is executed by the president and general manager of a company on its behalf and in its name, and the contract is within the powers of the corporation, it will be presumed that he was duly authorized to make it.

In *National State Bank* v. *Vigo County Bank,* 40 N. E. 799 (Ind.), the Court said: "When a contract is made in the name of a corporation by the president, in the usual course of business, which the directors have the power to authorize him to make, or to ratify after it is made, the presumption is that that contract is binding on the corporation until it is shown that the same was not authorized or ratified." In the case of *Eureka Iron & Steel Works* v. *Bresnahan,* 60 Mich. 332, it is said: "In the absence of any provision to the contrary contained in the charter of a corporation, it will be presumed that its president, secretary and treasurer have the authority to make all necessary contracts in transacting the ordinary business of the corporation, within the legitimate scope, object, and purpose of its organization." In the case of *Smith* v. *Smith et al.,* 62 Ill. 493, speaking of the president of the corporation the Court said: "He being the legal head of the body, where an act pertaining to the business of the company is performed by him, the presumption will be indulged that the act is legally done, and is binding upon the body," and in *Patterson* v. *Robinson et al.,* 116 N. Y. 193, the Court held that the contract was one which the board of directors had the power to authorize their president to make, or to ratify after it had been made, and that, therefore, the burden was on the plaintiff to show that the contract was not authorized or ratified by the directors. In *Thompson on Corporations,* Vol. 2, sec. 1576 (2nd ed.), the learned author, after stating that "The governing principle with reference to the general power of a manager is that where he has the actual charge and management of the business, by the appointment of or with the knowledge of the directors, the corporation will be bound by his acts and contracts which are necessary or incident in the course of the business, without other evidence of actual authority," says: "The reason for this rule is that the corporation by the very fact of the appointment of such manager, holds him out to the public as the person authorized to bind it by contracts necessary in the prosecution of

its business. It has been said that the very use of the word
'manager,' when applied to the officer, conveyed the idea to
the ordinary mind that to one thus named had been com-
mitted the management of the affairs of the corporation;
and to hold that one dealing with the person so held out
must, before the corporation can be held liable for his acts,
show affirmatively that it had authorized them, would often
result in great hardship." In the case of *Equitable Endow-
ment Asso.* v. *Fisher*, 71 Md. 430, the general agent and State
agent of the appellant employed the appellee as general man-
ager of its business, and he was afterwards dismissed from
the service of the appellant and brought suit to recover for
breach of contract. The suit was defended on the ground that
the general agent and State agent had no authority to employ
a general manager, and in disposing of that question JUDGE
BRYAN says: "The officers making this contract for services
were designated as defendant's general agent and State agent,
and would naturally be understood by the public as having
the power to employ persons to assist in the prosecution of
its work. * * * It was impossible for the plaintiff to know in
what way the powers of the officers in charge of the business
of the defendant were limited by by-laws or private instruc-
tions. They were held out to the public as having general
authority, which would comprehend the contract in question,
and what they have done within the scope of this authority
is, and ought to be, binding on the defendant." In the case
at bar the contract sued on was executed in the name of the
appellant by its president and general manager, and for the
purpose of promoting the very business for which the com-
pany was incorporated, and in which it was engaged. It
was not made to assist Kurtz, or to advance any private
interest of the agent of the company, but was executed in
order to accomplish the end for which the company was
organized, and the appellant received the benefit of it. The
entire management and conduct of the business were appar-
ently entrusted by the directors to the president and general
manager of the company, and we think the contract in ques-

tion, having for its only purpose and object the sale of the beer of the company, was clearly within his implied authority.

What we have said disposes of all of the rejected prayers of the defendant except its sixth prayer, which, in so far as it is free from objection, is fully covered by its eighth prayer as modified and granted by the Court.

The evidence referred to in the first exception was not admissible on cross-examination, there being no reference to the matter to which it relates to the examination in chief.

The second and third bills of exception each include more than one exception to rulings on the evidence, and, under the rule which requires each ruling to be presented by a separate bill of exception, those exceptions will not be considered. *Junkins* v. *Sullivan,* 110 Md. 539; *Baltimore & Ohio R. R. Co.* v. *Reuter,* 114 Md. 687.

The fourth exception is to the refusal of the Court below to admit in evidence the by-laws of the appellant, and we think there was no error in this ruling. It was impossible for the plaintiff to know in what way the powers of the president and general manager of the appellant in charge of the business were limited by by-laws or private instructions. *Equitable Endow. Assn.* v. *Fisher, supra.* In the case of *Smith* v. *Smith, et al., supra,* the Court, speaking of the by-laws of a company, said: "But those are private and only accessible to the officers of the company. Strangers to the company can not be bound by the rules adopted for the government of the company * * * and persons not officers of the company can not be required to know the provisions of their by-laws."

The fifth and sixth exceptions are to the rejection of evidence offered by the defendant to show that the plaintiff, before Kurtz sold his business in August, 1908, requested Hermann not to interfere with the sale by Kurtz, and promised that if he did not do so, and the single bills in question were not paid out of the proceeds of such sale, he would

release the defendant from any liability on them. This evidence was not admissible for the reason that the defendant insisted that Hermann was not authorized by it to make any such contract with the plaintiff.

It does not appear from the record in what way or to what extent the Court below modified the eighth prayer of the defendant, and we can not, therefore, pass upon the exceptions to the modification of the prayer.

Finding no reversible error in any of the rulings of the Court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*