# EASTERN SHORE BROKERAGE AND COMMIS-
# SION COMPANY

*vs.*

# ORLANDO HARRISON ET AL.

*Appeal—Delay in Transmitting Record—Letter of Guaranty—
Construction—Manager of Corporation—
Scope of Authority.*

Where the bills of exception were prepared by the appellant, signed by the trial judge, and filed within the period allowed by the order of the lower court, and the appellant had arranged with the clerk to pay the cost of preparing the record, it was not ground for dismissal of the appeal that, owing to the lateness of the date at which the bills of exception were received by the clerk, the record was not transmitted to the Court of Appeals within three months from the date of taking the appeal, as required by the rules of that court.                          p. 94

A letter reading, "We hereby guarantee the payment of 1,000 baskets of peaches sold to the W. Company," and in a subsequent paragraph, "All their goods go through our hands, and we will see that you are paid for any goods you sell them," *held* to involve an absolute guaranty of payment for all goods sold such company.                          p. 98

The defense of *ultra vires* must be pleaded specially.      p. 99

Where the contract in suit was made to promote the business of defendant corporation and for its benefit, the defense of *ultra vires* was not pleaded specially, and the certificate of incorporation of defendant was not offered in evidence, it will be presumed that defendant had power to make the contract.
                          p. 99

Where a contract of guaranty was made in the name of a corporation by one who was not only its "manager of sales," but also the one to whom was intrusted the entire management and conduct of its business, the contract was made only to promote the corporate business, and the corporation received and

retained the benefit thereof, *held* that the contract was within the implied authority of such agent.                    pp. 99-102

Each ruling on the evidence must be made the subject of a separate exception.                    p. 102

A question asked of a director of a corporation, as to what authority the general manager had to make a contract of guaranty, if intended to elicit the opinion of the witness, was inadmissible.                    p. 103

On an issue as to the authority of the business manager of defendant corporation to execute the contract of guaranty in suit, a witness could not be asked what authority was conferred on such officer by the certificate of incorporation or the by-laws, since these were the best evidence of what they contained, and because it is impossible for persons dealing with one entrusted with the general management of the corporate business to know in what way his authority is limited by by-laws or private instructions.                    p. 103

A question asked of a witness as to what are the duties of a "sales manager of a brokerage house" was properly excluded in the absence of evidence to show that the witness was qualified to answer the question.                    p. 103

Where the employee of defendant brokerage corporation, who executed in its name the contract in suit, was not only manager of sales but also entrusted with the general management of defendant's business, it was proper to exclude a question asked a witness, on an issue as to such employee's authority to execute the contract, as to what are the duties of the sales manager of a brokerage house.                    p. 103

That a letter, guaranteeing payment for goods sold a certain company by plaintiff, stated that "We would like you to keep us advised as to the quantity and the amounts (of goods so sold), so that we can keep some check on what they are doing," did not make the actual receipt of notices of sales a condition precedent to liability on the guaranty, such notices having been mailed to the guarantor, though not received by it, and no claim being made of prejudice by the failure to receive them, or that any different method of notification was contemplated.
p. 104

*Decided April 5th, 1922.*

Appeal from the Circuit Court for Queen Anne's County (WICKES, J.).

Action by Orlando Harrison and George A. Harrison, partners trading as Harrison's Nurseries, J. G. Harrison & Sons, Proprietors, against the Eastern Shore Brokerage & Commission Company, on a contract of guaranty. From a judgment for plaintiffs, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Arthur W. Machen, Jr.,* and *Raymond S. Williams,* with whom were *Fred. R. Owens, J. Frank Harper, J. H. C. Legg* and *Hershey, Machen, Donaldson & Williams* on the brief, for the appellant.

*John S. Whaley* and *John W. Staton,* with whom was *Thomas J. Keating* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Queen Anne's County, and a motion has been filed by the appellees to dismiss the appeal on the ground that the record was not transmitted to this Court within three months from the date of the appeal.

The docket entries show that the judgment was entered on the 16th of May, 1921, and that the order for appeal was filed on June 29th, 1921, that by several orders of the court below, regularly passed, the time for "filing and signing the exceptions" was extended to the 30th of September, 1921, and that the bill of exceptions was filed on September 28th, 1921. The record reached this Court on October 15th, 1921.

and Fred R. Owens, Esq., one of the counsel for the appellant, has filed an affidavit stating that the bill of exceptions was presented to the trial judge at Chestertown about the 21st of September; that the judge signed the exceptions on the 24th of September, and mailed the bill of exceptions to him at Denton, and that he immediately remailed it to the clerk of the circuit court at Centreville on the 27th of September, 1921; that he had previously made satisfactory arrangements with the clerk for the payment of the cost of the record, and that it was not possible for the clerk, after receiving the bill of exceptions, to prepare the record and transmit it to this Court within the three months from the date of the appeal.

As the bills of exception were prepared by the appellant, signed by the trial judge, and filed within the time allowed by the order of the court below, and the appellant had arranged to pay the cost of preparing the record, it cannot be said that the delay in transmitting it to this Court was due to the appellant or his counsel, and the motion to dismiss the appeal must therefore be overruled. *Cochrane* v. *Little,* 71 Md. 323; *Duvall* v. *Md. Elec. Rys. Co.,* 114 Md. 298; *Snowden* v. *State,* 133 Md. 624; *Hall* v. *Albertie,* 140 Md. 673.

The appellees, Orlando Harrison and George A. Harrison, co-partners trading as "Harrison's Nurseries, J. G. Harrison & Sons, Proprietors," were large growers and shippers of fruit trees, fruit, vegetables, &c., with an office at Berlin, in Worcester County, Maryland. The appellant, The Eastern Shore Brokerage and Commission Company, a Maryland corporation, was engaged at Preston, in Caroline County, Maryland, in selling canned goods for packers on commission, and in the summer of 1919 had a contract with Edgar R. Loweree, who was operating a canning factory at Willards, in Wicomico County, Maryland, under the name of the Willards Canning Company, by which, in consideration of supplying the canning company with cans and other materials, the appel-

lant was to receive the entire pack of the canning company
for sale for a commission of five per cent.

On August 12th or 13th, 1919, the canning company,
through the son of Edgar R. Loweree, applied to the appellees
for several "truck loads or more" of peaches, and was referred
to G. Hale Harrison, the treasurer and sales manager of the
appellees. Mr. Harrison told him that, as the canning com-
pany was a new concern, he could not let him have the peaches
unless the company deposited the money to pay for same or
gave the appellees a satisfactory "guarantee." Mr. Loweree
said that the canning company "was closely affiliated with the
Eastern Shore Brokerage and Commission Company at Pres-
ton," of which Mr. Walter M. Wright was president and
James A. Colbert was sales manager, and Mr. Harrison re-
plied that he had never heard of the brokerage company, but
did know "Walter M. Wright personally," and that if he,
Mr. Loweree, could make proper arrangements with the
brokerage company the appellees "would try to do some busi-
ness with him." The following day the appellees received
a telephone call from the brokerage company at Preston and,
when Mr. G. Hale Harrison answered the call, he was told
that it was the brokerage company and that Mr. Colbert was
speaking. In the telephone conversation that followed, Mr.
Colbert, after learning from Mr. Harrison what the appellees
had to sell, told him that the brokerage company was inter-
ested in the canning company, and in purchasing "raw mate-
rials" (fruit, &c.) for the canning company; that the broker-
age company had the exclusive right to sell the pack of the
canning company, and wanted to get fruit, &c., for the can-
ning company to pack so as to increase the sales of the broker-
age company, and wanted the appellees to furnish fruit to the
canning company. At the close of the telephone conversa-
tion, Mr. Harrison asked Mr. Colbert to have the brokerage
company confirm his statements by letter, and accordingly, on
the 14th of August, 1919, the appellees received the following
letter from the brokerage company:

"The Eastern Shore Brokerage and Commission
Company.
"Reliable Service—Code: Armsby.
"Walter M. Wright,            James A. Colbert,
        "President.                    Mgr. of Sales.

"Preston, Maryland, Aug. 14, 1919.
"J. G. Harrison & Sons,
    "Berlin, Maryland.
"Gentlemen:
    "With reference to the telephone conversation we
had with your Mr. Hale Harrison today, we hereby
guarantee the payment of 1,000 baskets of peaches
sold to Willards Canning Company at Willards,
Maryland, at 50c. per basket.
    "For your information, wish to say that we are
handling this pack exclusively, and that all their
goods go through our hands, and we will see that
you are paid for any goods you sell them, but would
like you to keep us advised as to the quantity and
the amounts so that we can keep some check on what
they are doing.
                "Yours very truly,
                "The Eastern Shore Brokerage and Com-
                    mission Co.,
    "JC—AL          J. A. Colbert, Mgr. of Sales."

Relying upon this letter of the brokerage company, the
appellees, from August 14th to October 3rd, 1919, sold the
canning company peaches, apples and pears to the value of
$4,952.73, and mailed to the brokerage company, on the day
of shipment or delivery, a copy of the bill of each sale of
such fruit. On August 23rd and October 15th, 1919, the
appellees received checks to the amount of $1,510 on account
of the fruit sold the canning company, leaving a balance due
of $3,442.73. The fruit canned by the canning company was,
by direction of the brokerage company, shipped by the can-
ning company to the Terminal Warehouse in Baltimore, and
the receipts for same turned over to the brokerage company,

and was still "in storage" in the warehouse at the time of the trial in the court below. After repeated demands on the canning company and the brokerage company for payment of the balance due, this suit was instituted by the appellees against the brokerage company in the Circuit Court for Caroline County, and was subsequently removed to the Circuit Court for Queen Anne's County for trial.

The *narr.* contains the common counts in assumpsit and a special count on the contract contained in the letter of August 14th, 1919, and the only pleas filed by the defendant were "never was indebted as alleged" and "never promised as alleged." During the trial, which resulted in a verdict and judgment for the plaintiffs, the defendant reserved twenty-eight exceptions, all of which are to rulings of the court on the evidence, except the twenty-eighth, which is to the granting of plaintiffs' second prayer, the rejection of the defendant's nine prayers, and the overruling of defendant's special exception to plaintiffs' second prayer. As the special exception is not in the record it will not be necessary to refer to it again.

In their brief filed in this Court, counsel for the appellant say:

"The record contains twenty-eight bills of exception—twenty-seven being taken to rulings on the evidence, and one to rulings on the prayers. Nevertheless, the main questions involved are few and simple. They may be classified as follows:

"(1) The question of the construction of Colbert's letter, *i. e.*, whether it was ever intended to create a legal guarantee without restriction, qualification or limit.

"(2) The question whether the alleged guarantee, if it was given, was *ultra vires* of the defendant corporation, and, so, unenforceable.

"(3) The question whether Colbert acted within the scope of his authority, as agent of the defendant, in giving the alleged guarantee.

"(4) The question whether evidence offered by the appellant bearing upon the scope of Colbert's authority ought not to have been received.

"(5) The question whether notice of sales to Willard's Canning Company mailed to defendant was sufficient, though never received."

1. Taking up these several questions in the order suggested by the appellant, we find no support in the letter itself, or in the circumstances under which it was written, to warrant the contention of the appellant that it was not intended as an "absolute guarantee beyond the 1,000 baskets" of peaches mentioned in the first paragraph. The language of the second paragraph is equally as explicit. "We will see that you are paid for any goods you sell them" is a clear, definite and unambiguous statement of the undertaking of the appellant in reference to "any goods" the appellees might sell the canning company. It is conceded by counsel for the appellant that the words quoted, if they stood alone, would "be sufficient to indicate an intention to assume the obligation of a general guarantor," and we think that when they are read in connection with the rest of the letter any possible doubt as to their meaning is removed. The first paragraph of the letter refers only to the 1,000 baskets of peaches, which Mr. Loweree's son had tried to purchase a day or two before, and if the appellant had intended to confine its obligation to those peaches there would have been no occasion to refer to other sales to the canning company. But what the appellant desired was to secure from the appellees the fruit needed by the canning company for its factory, and which the appellees had refused to furnish without a deposit to cover the price, or a satisfactory "guarantee" of payment, and it was to meet that requirement of the appellees that the second paragraph of the letter was written.

2. The second question stated by counsel for the appellant is not presented by the record in this case. The special count in the *narr.* is upon the contract contained in the letter of

August 14th, 1919, which is set out in the declaration, and the only pleas filed by the defendant were, as we have said, "never indebted as alleged" and "never promised as alleged." It is said in 10 *Cyc.* 1156, "The defense of *ultra vires* is special and is not available under a general denial, but must be specially pleaded and proved." This rule, to the extent of requiring the defense to be pleaded specially, was approved in *Conowingo Land Co.* v. *McGaw,* 124 Md. 653, where CHIEF JUDGE BOYD said: "The general rule seems to be well established that the defense of *ultra vires* must be pleaded specially," and many authorities in support of the rule are cited in *Hagerstown Brew. Co.* v. *Gates,* 117 Md. 348, where this Court quotes from 10 *Cyc.* 1155 the statement of JUDGE SEYMOUR D. THOMPSON that, "A general presumption of right-acting attends corporations, the effect of which is to place the burden of proving that a contract made or an act done by a corporation was *ultra vires* upon him who alleges that fact as the foundation of his action or defense." While in the case of *Hagerstown Brew. Co.* v. *Gates, supra,* the Court was careful to say that it was not "to be understood as holding that in every case, regardless of the nature of the contract or the character of the corporation, the act of the corporation relied on will be presumed to be within its corporate powers," in the case at bar, where the contract sued on was made to promote the business of the appellant and for its benefit, and where the defense of *ultra vires* was not pleaded specially, and the certificate of incorporation of the appellant was not offered in evidence, we cannot hold that the appellant had no power to make the contract.

3. In reference to the third question, it would seem only necessary to refer to the evidence produced by the plaintiffs, which shows that, while on the stationery of the appellant Mr. Colbert, was represented to be the "manager of sales" and Mr. Walter M. Wright, the president of the appellant, the entire management and actual conduct of the business of the appellant was intrusted to Mr. Colbert, who received and

answered all communications with the appellant; who conducted negotiations for the purchase of materials and fruit for canning factories represented by the appellant, and who, in a number of other instances, entered into a similar contract on behalf of the appellant guaranteeing payment for such fruit and materials. This evidence also shows that the contract in suit was made for the benefit of the appellant, and to promote the business in which it was engaged; that the appellant, in pursuance of its contract with the canning company, received the output of the canning company's factory, or it pack, for the year 1919, which included the fruit purchased from the appellees, and which was still in the possession of the appellant, or in the warehouse subject to its order, at the time of the trial in the court below. In 14A *C. J.* 359, it is said: "Unless his authority is specially restricted, the authority and power of a general or managing officer or agent are co-extensive with the powers of the corporation itself, and he has authority to do any act on its behalf which is usual and necessary in the ordinary course of the company's business, or which he is held out to the public as having authority to do, and may exercise all the powers which the board of directors could exercise or authorize under the same circumstances in the general management of the corporation business." In the case of *Carrington* v. *Turner,* 101 Md. 442, the Court said: "The witness Owens * * * testified without contradiction that Lee the president and Kohler the secretary and treasurer were the active managers of the company and transacted all of its business that was not referred to the board of directors who met but once a month. Those two gentlemen conducted on behalf of the Trust Company the entire transaction with Turner touching his subscription for the stock of the Insurance Company and the carrying of that stock for him. After Turner had assigned his insurance stock to the Trust Company it caused that stock to be transferred to its own broker and afterwards to its treasurer and twice raised money on it for its own use, in one instance at least

with the authority of its board of directors. These facts especially when they were met with no explanation on the part of Lee or Kohler or the Trust Company were properly to be considered by the jury in determining whether in fact Lee and Kohler as officers of that company had authority to accept the 150 shares of insurance stock from Turner in satisfaction of his note and also whether their transactions in that connection were not subsequently adopted by the Trust Company." In the case of *Buchwald Transfer Co.* v. *Hurst,* 111 Md. 577, CHIEF JUDGE BOYD said: "Directors may make themselves liable for such neglect, but courts should not be too ready to relieve corporations from the results of such neglect under such circumstances as we have in this case, as innocent persons are likely to be made to suffer, if corporations can permit officers to exercise such control over their affairs as an individual does over his own, and then, if disaster comes, escape from liability by denying the authority of the officers to do the very thing they had been permitting them to do, or such things as would lead the public to believe they had the right to do," and in the more recent case of *Hagerstown Brew. Co.* v. *Gates, supra,* where the suit was on two contracts of the brewing company, executed in its name by an agent acting as its president and general manager, endorsed on and guaranteeing the payment of two single bills of one Kurtz in favor of the plaintiff, the Court, after quoting with approval the statement, in 2 *Thompson on Corporations* (2nd Ed.), sec. 1576: "The governing principle with reference to the general power of a manager is that where he has the actual charge and management of the business, by the appointment, or with the knowledge of the directors, the corporation will be bound by his acts which are necessary or incident in the course of the business, without other evidence of actual authority," then said: "The contract sued on was executed in the name of the appellant by its president and general manager, and for the purpose of promoting the very business for which the company was in-

corporated, and in which it was engaged. It was not made to assist Kurtz, or to advance any private interest of the agent of the company, but was executed in order to accomplish the end for which the company was organized, and the appellant received the benefit of it. The entire management and conduct of the business were apparently intrusted by the directors to the president and general manager of the company, and we think the contract in question, having for its only purpose and object the sale of the beer of the company, was clearly within his implied authority." So in the case now under consideration, the contract in question was made in the name of the appellant by one who was not only its "manager of sales," but the one to whom was intrusted the entire management and conduct of the business of the appellant. It was not made to assist the canning company, or to advance the private interest of Mr. Colbert, but only for the purpose of promoting the very business in which the appellant was engaged, and the appellant received and retained the benefit of it. There being no question in the case as to the power of the appellant to make the contract, we must hold upon the evidence referred to that it was clearly within the implied authority of the agent who executed it in the name of the appellant.

4. The evidence referred to in the fourth question stated in the appellant's brief is embraced in the nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh bills of exception. All of these bills of exception, except the twenty-second, twenty-third, twenty-fourth and twenty-sixth, embrace a number of rulings on the evidence, and under the well settled rule requiring each ruling on the evidence to be made the subject of a separate exception, they will not be considered. *Junkins* v. *Sullivan,* 110 Md. 539; *Balto. & Ohio R. Co.* v. *Rueter,* 114 Md. 687; *Hagerstown Brew. Co.* v. *Gates, supra.* The twenty-second exception is to the refusal of the court to permit the witness to answer the following question:

"Mr. Jarrell, as a director and member of the executive committee, state, if you know, what authority, if any, Mr. Colbert had to bind or make liable The Eastern Shore Brokerage & Commission Company as a guarantor or a surety for others." If this question was intended, as its form indicates, to elicit the opinion of the witness, it was clearly inadmissible, and if it was asked for the purpose of showing what authority was conferred on Mr. Colbert by the certificate of incorporation or by-laws of the appellant, it was not less objectionable, because the certificate of incorporation or the by-laws themselves were the best evidence of what they contained, and because it is impossible for persons dealing with those who are given general management of the business of a corporation to know in what way their authority is limited by by-laws or private instructions. *Equitable Endow. Ass'n v. Fisher*, 71 Md. 430; *Hagerstown Brew. Co. v. Gates, supra.* The twenty-third exception was to the refusal of the court to permit the same witness to state what the duties of a "sales manager of a brokerage house" were. The question was objectionable because there was no evidence to show that the witness was qualified to answer the question, and because Mr. Colbert was not only "manager of sales" but was also intrusted with the general management of the business of the appellant. The question asked Mr. Payne in the twenty-fourth exception was likewise objectionable because Mr. Colbert's duties and authority was not, as we have said, limited to the duty and authority of a "sales manager." The question objected to in the twenty-sixth exception was answered by the witness, and the appellant got the benefit of his answer.

5. The fifth and only other question raised and discussed in appellant's brief, is whether the mailing of notices of sales to the canning company was a compliance with the contract, the defendant having offered evidence tending to show that the notices were not received by it. The appellant relies upon the statement in 21 *Am. & Eng. Ency. of Law* (2nd Ed.), 582, note 1: "Where the giving of notice is a condi-

tion precedent to liability under a contract, the notice contemplated is actual, and this requirement is not met by merely mailing a statement of the fact to be communicated, where a receipt of the letter is denied by the party to be charged. In such a case it must be shown that the notice was received." But we do not think the letter from the appellant to the appellees can be construed as requiring actual notice of sales to the canning company, as "a condition precedent to liability" of the appellant. The appellant had other means of knowing what fruit was being purchased by the canning company from the appellees, and if it had intended to make its obligation conditional upon actual notice from the appellees, it would have so stated in definite terms instead of saying, "but we would like you to keep us advised as to the quantity and the amounts so that we can keep some check on what they are doing." There was no attempt to show, and it is not claimed, that the appellant suffered any loss in consequence of its failure to receive the notices mailed to it by the appellees, nor is there anything in the letter, or in the circumstances under which it was written, to indicate that any other or different method of notifying the appellant was contemplated by the parties.

This disposes of all the questions raised by counsel for the appellant in their brief. The other exceptions to rulings of the court on the evidence and to its action on the prayers were not pressed in this Court, except to the extent that they were covered by the several questions we have already discussed and disposed of. We have carefully examined these exceptions, however, and do not find reversible error in any of them. Notwithstanding the evidence to which we have referred was uncontradicted, and, as we have said, brought the contract sued on within the implied authority of Mr. Colbert, the defendant's first and second prayers sought to withdraw the case from the jury, while the others, except the ninth, asked the court to instruct the jury that the burden was on the plaintiffs to show that Mr. Colbert, in writing the letter

of August 14th, acted within the scope of his authority, or that his action in the matter was subsequently ratified by the defendant, and that unless they found that he was acting within the scope of his authority, or that his action was subsequently ratified by the defendant, their verdict should be for the defendant. The first and second prayers were, therefore, clearly objectionable, and in view of the effect of the evidence we have mentioned, the others would have been misleading. The defendant's ninth prayer was based upon the view that its obligation was confined to the one thousand baskets of peaches mentioned in the first paragraph of the letter, and is disposed of by what we have said in discussing the first question raised by counsel for the appellant.

Finding no reversible error in any of the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*