## PENOWA COAL SALES CO. *v.* GIBBS & CO. ET AL.

[No. 69, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Roger A. Clapp*, with whom were *Hershey, Donaldson, Williams & Stanley*, on the brief, for appellant.

*Joseph T. Brennan*, 2nd., with whom was *Charles Ruzicka*, on the brief, for Gibbs & Co., Inc., appellee.

*Walter A. Feldman*, for C. W. Hendley & Co., Inc., Appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Penowa Coal Sales Company, a Pennsylvania corporation, in the Superior Court of Baltimore City against Gibbs & Company, Inc., a Baltimore canner, and C. W. Hendley & Company, Inc., a Baltimore coal dealer. Plaintiff alleged in the declaration: (1) that on November 12, 1946, Hendley sold to Gibbs 327.85 tons of coal at $6.75 per ton, whereby Gibbs became indebted to Hendley in the amount of $2,212.99; (2) that on October 6, 1947, Hendley assigned to plaintiff its claim against Gibbs for the purchase price of the coal; and (3) that neither Gibbs nor Hendley has paid any of that amount.

The coal had been purchased by Hendley from plaintiff for export to France; but, on account of delay in shipment due to labor difficulties, the coal did not arrive in Baltimore until November 30, 1946. As the cargo vessel, on which Hendley had expected to ship the coal, had already started for Europe, Hendley sold the coal to Gibbs and delivered it by scow to Gibbs' pier. As soon as the coal was tried in the boiler at the Gibbs plant, it caused trouble. George Roberts, the engineer, testified: "I had to shut down. That hit the canning process which means a good deal of steam, and it has to cook vegetables, and we could not generate enough steam, enough to

run the plant. * * * I got the superintendent of the plant to give me some extra men, and we tried by picking the stone * * * out of that coal. We tried to burn it and they could not get satisfactory steam."

Oscar T. Sewell, vice president of Gibbs, immediately notified Hendley that the coal would not burn. Hendley notified plaintiff. Plaintiff dispatched its sales manager, W. W. Stone, to make an investigation. On December 8 Mr. Stone and William A. McLean, Hendley's general manager, visited the Gibbs plant to inspect the coal. As it appeared to be oxidized, they took several samples for chemical analysis. Mr. Stone warned the engineer not to use it unless he mixed it with other coal. Mr. McLean testified: "Mr. Stone and I recognized that due to the rocks that it had in it—foreign matter and rocks—it might do damage if it were burned by itself. * * * There were a couple of laborers working on the scow, and we agreed with Mr. Roberts that if those men could pick those rocks out, at least do that, and then upon getting it in the plant Mr. Roberts said that he thought that by mixing it with some other good coal he might be able to get rid of it."

Hendley thereupon delivered two carloads of high-grade coal to Gibbs. Some of the good coal was mixed with the bad, but even the mixture would not burn, because there was so much ash in the bad that it ruined the effect of the good. The chemical analyses substantiated the supposition that the coal was oxidized and that its large moisture content made it unfit for fuel. Accordingly on December 19 Gibbs returned to Hendley the invoices unpaid. In explanation of this action, Vice President Sewell wrote: "As indicated to you by conversations and otherwise, it has been necessary for us to operate two boilers instead of one in order to hold our steam pressure. We have had to increase our force in our boiler room by four men and they have been working overtime ever since we have been endeavoring to use this extremely poor quality of coal. Besides being poor quality, it runs very heavily in slate and stones."

On October 6, 1947, Hendley, in settling another claim which plaintiff had brought against it, paid plaintiff $10,000 in cash and assigned to plaintiff all its right, title and interest in and to the money due and owing to it by Gibbs by reason of the sale of the coal in November, 1946.

The Court, sitting without a jury, held that Gibbs had rightfully rejected the coal and had rescinded the contract. The Court accordingly entered judgment in favor of Gibbs. As to the claim against Hendley, the Court observed that, as the assignment of the claim against Gibbs warranted that no part of the purchase price of the coal had been paid, and that the amount due and owing had not been previously assigned, Hendley had committed a breach of warranty; but since plaintiff knew that there had been a controversy over Gibbs' liability for the coal, and hence was not seriously damaged by the breach of warranty, it was entitled to only nominal damages. The Court thereupon entered a judgment in favor of plaintiff against Hendley for the sum of $100. Plaintiff appealed from both judgments.

First, as to the judgment in favor of Gibbs. It is undisputed that Gibbs, as soon as it tried the coal, complained to Hendley, and that Hendley immediately complained to plaintiff. The evidence is convincing that the coal was unfit for fuel at the Gibbs canning plant. Mr. Sewell quoted Mr. McLean, Hendley's general manager, as saying that the coal was worthless, and that he should have it hauled out. Mr. McLean said that he did not believe he told Mr. Sewell to haul it out. But the Court was justified in believing Mr. Sewell.

We think there is no doubt that Gibbs rescinded the contract. The Uniform Sales Act, which has been adopted in this State, provides that where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, there is an implied warranty that the goods shall be reasonably fit for such purpose. Where the

goods are bought by description from a seller who deals in goods of that description, there is an implied warranty that the goods shall be of merchantable quality. Code 1939, art. 83, sec. 33. The Act also provides that where there is a breach of warranty by the seller, the buyer may rescind the sale and refuse to receive the goods; or, if the goods have already been received, return them or offer to return them to the seller and recover the price, or any part thereof, which has been paid. Code 1939, art. 83, sec. 87.

It has been urged by plaintiff that Mr. McLean had not been authorized by the board of directors of the corporation, for which he was acting as general manager, to tell Mr. Sewell to haul the coal out, or to release Gibbs from liability. But it is clear that he was acting within the scope of his apparent authority. As between a principal and his agent, the scope of the agent's authority may be limited by secret instructions and restrictions; but as between the principal and third persons, the mutual rights and liabilities are governed by the scope of the agent's apparent authority, which is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny. Ordinarily, a general manager of a corporation has authority to do any act on its behalf which is usual and necessary in the ordinary course of its business, or which he is held out to the public as having authority to do, and may exercise all the powers which the board of directors could exercise or authorize under the same circumstances in the general management of the business of the corporation. *Brager v. Levy,* 122 Md. 554, 90 A. 102; *Eastern Shore Brokerage & Commission Co.* v. *Harrison,* 141 Md. 91, 100, 118 A. 192; *American Casualty Co. v. Ricas,* 179 Md. 627, 633, 22 A. 2d 484.

Inasmuch as the coal could not be used at the canning plant, Gibbs on December 19, 1946, returned the invoices unpaid. Hendley did not send any further bills to Gibbs for this coal, although it has sold many other

shipments of coal to Gibbs during the last several years and has been regularly paid for them. As the evidence is convincing that Gibbs rescinded the contract, we cannot say that the trial judge was clearly wrong in entering judgment in favor of Gibbs.

Secondly, plaintiff contends that it is entitled to a larger judgment than $100 against Hendley. The Court found that Hendley had committed a breach of warranty by releasing Gibbs from any obligation to pay for the coal. We are unable to find that Hendley committed any breach of warranty. We recognize that an assignor of a right by assignment warrants to the assignee, in the absence of circumstances showing a contrary intention, that he will do nothing to defeat or impair the value of the assignment; that the right as assigned actually exists and is subject to no limitations or defenses other than those stated or apparent at the time of the assignment; and that any evidence of the right delivered to the assignee as part of the transaction of assignment, or exhibited to him as an inducement to accept the assignment, is genuine and what it purports to be. *1 Restatement, Contracts,* sec. 175.

However, the fact that the assignment now before us contained a warranty that no part of the purchase price of the coal had been paid, and that the amount due and owing had not been previously assigned, did not imply that the assignor was warranting that the claim had any particular value. When Hendley assigned the claim to plaintiff, plaintiff knew that it was not getting anything of value under the assignment, because it knew that the coal was worthless to Gibbs. C. Wharton Brown, Hendley's president, quoted Mr. Stone, plaintiff's sales manager, as follows: "Mr. Stone admitted it was nothing but a bunch of rubbish when I asked him the question. * * * In fact, I might add, Mr. Stone remarked that he was surprised anybody tried to collect for this junk that was going to Gibbs." Moreover, plaintiff gave Hendley a release discharging Hendley forever from all claims plaintiff might have against it. How-

ever, Hendley did not appeal from the judgment for $100 entered against it. Therefore, this judgment also must be affirmed.

*Judgments affirmed, with costs.*