# ALBERT A. BRAGER

*vs.*

## ADOLPH LEVY AND MORRIS MARKOWITZ, Co-Part-NERS, TRADING AS LEVY & MARKOWITZ.

*Agency: authority of agent; rights of third parties; when question for jury; "buyers" of department stores.*

Where a suit is brought on the common counts in assumpsit to recover the contract price for goods claimed to have been sold by the plaintiff to the defendant, who pleads the general issue, it is incumbent upon the plaintiff to prove an acceptance of the goods by the defendant, and that they had been shipped to the defendant in compliance with the terms of an order or agreement signed by the defendant or authorized by him. p. 558

The mere fact that an employee is called "buyer" clothes him with no power to bind the principal by acts wholly without the scope of his authority. p. 560

The principle that a general authority to an agent can not be limited by private instructions, not known to third parties, can not be applicable to cases where no general authority is shown to exist. p. 560

In general, the powers of an agent rest upon the authority conferred by the principal; and a person dealing with an agent is put upon inquiry as to what is his true authority. p. 560

For a third person to be able to hold the principal by relying upon the apparent authority of an agent, such authority must have been actually apparent to such third person, who must have dealt with the agent in reliance thereon, in good faith and in the exercise of reasonable prudence. p. 561

Unless the authority of an agent is conferred by a written instrument, the existence of agency, with the extent of the agent's power, is a question of fact for the jury. p. 562

But such facts can only be shown by competent evidence, and the burden of proof is on him who assumes the affirmative.

p. 560

Where there is no evidence legally sufficient to sustain a finding of agency, the question should not be submitted to the consideration of the jury.    p. 562

*Decided February 4th, 1914.*

Appeal from the Superior Court of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Randolph Barton, Jr.,* (with whom was *Louis N. Frank* on the brief), for the appellant.

*J. Kemp Bartlett, Edgar Allan Poe, L. B. Keene Claggett* and *R. Howard Bland,* submitted the case on a brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought on the common counts in assumpsit to recover the contract price of goods claimed to have been sold by the appellees to the appellant. The defendant, appellant, pleaded the general issue plea, and the trial in the Court below resulted in a judgment for the plaintiffs from which the defendant has appealed.

The evidence shows that the defendant conducted a large department store in Baltimore City, and in the conduct of that business employed a "buyer" for each department of the store. One of the duties of the "buyer" was to make out orders for goods required in his department and submit them to the manager or proprietor for his approval or confirmation. The "buyer" was not authorized to purchase goods, but his authority in that connection was limited to selecting and making out the orders for the goods needed

in his department and submitting them to the manager or proprietor, for his approval and signature. Accordingly the "buyer" of each department was supplied with a book containing blank orders of the following form:

"Salesman ..................Date .........191 .

Messrs. . . . ....................................

Time for Delivery: Terms:

.................... ....................

Albert A. Brager,
Baltimore.

Ship via...........................

For Department.................Dating...........

All goods sent in excess of, or different from this order, will be returned at expense of shipper. All goods not sent with first shipment to be prepaid.

Lot No. ...........:..........................

............................................

............................................

............................................

Total Amount.......................

This order is not valid unless signed by the Firm or Manager."

These books were arranged so that three impressions or copies could be made of each order, and according to the rules and custom of the defendant after an order is signed by the manager or proprietor one copy is sent to the manufacturer or person from whom the goods are ordered, and another copy to the receiving clerk of the defendant. Goods are received by the receiving clerk according to the copy of the order delivered to him, and no goods are accepted by the store unless there is an order for the same signed by the manager or proprietor. This method of purchasing goods had been established and strictly observed by the defendant for a number of years and was never departed from, and goods were never accepted by the defendant unless they were ordered by the manager or proprietor, except in some instances where the amounts of the purchases were under

twenty-five dollars. The evidence also shows that it is the uniform and established custom of department stores in Baltimore City to require orders made out by the "buyers" of the various departments to be confirmed or approved by the managers or proprietors.

In May, 1911, the defendant employed William S. Weinstein as "buyer" for the boys' and children's clothing department of his store, and he was given one of the order books referred to and used it in making out orders for goods needed in his department. The plaintiffs, who were engaged in business in New York, knew Weinstein, and in May, 1911, wrote their agent and traveling salesman, Samuel Markowitz, to go to see Weinstein. Markowitz had never sold goods to or had any dealings with the defendant and had never sold goods in Baltimore. He went to the defendant's store to see Weinstein on the 31st of May, 1911, and he states that Weinstein introduced him to Carey, the assistant "buyer" for the department in which Weinstein was engaged, and told him that Carey was the "head man." Later on the same day Weinstein and Carey met him by appointment at the Howard House, where he exhibited to them his samples and Weinstein gave him a written order for goods amounting to $1,098.00, to be shipped to the defendant September 1st, 1911. Weinstein and Carey say that when the order was made out and given to Markowitz, they explained to him that the order was not binding on the defendant until it was signed or confirmed by the manager or merchandise man of the defendant or by the defendant. Markowitz says that nothing was said to him "about confirmation of the order"; that when he obtains an order for goods he sends it to the plaintiffs, and that they send samples of the goods indicated by the numbers in the order to the "buyer" of the purchaser of the goods with a letter thanking him for the order. While Weinstein was on his vacation about the middle or last of August, 1911, he went to the store of the plaintiffs in New York, looked at the samples of the goods he had ordered and

told plaintiffs to ship all that they had ready on or as near the first of September as they could, and to ship the balance "as soon thereafter as possible." On September 2nd, 1911, the plaintiffs shipped to the defendant a part of the goods ordered by Weinstein, to the amount of $893.50. When they arrived in Baltimore the defendant refused to accept them, and wrote the plaintiffs as follows:

"Baltimore, Md., Sept. 5, 1911.

Messrs. Levy & Markowitz,

    718 Broadway, New York City.

Gentlemen:—

We have declined to receive a shipment of goods from you today as our office knows nothing of this purchase.

It is an inviolate rule with this house to require all orders to be confirmed in the office. Hence, you should not have shipped us any goods until you received such confirmation.

Very truly yours,

A. A. BRAGER."

The evidence further shows that the order given by Weinstein to Markowitz was never signed or approved by the manager or the defendant, and that neither of them knew that the order had been given until after the goods arrived.

Under the pleadings it was incumbent upon the plaintiffs to prove an acceptance of the goods by the defendant, or that they had been shipped to the defendant in compliance with the terms of an order or agreement signed by the defendant or his authorized agent. 1 *Poe, Prac. & Pl.,* secs. 96-97; Art. 83, sec. 25, Code of 1912.

As we have said, the evidence shows that Weinstein, who gave the order for the goods, was not authorized by the defendant to purchase them. There is some confusion and contradiction in the testimony of Weinstein as to what he understood his authority to be, but taking his testimony as a whole we think it is clearly to the effect that he knew at the time he gave the order in question that he had no power to bind

the defendant without the signature or approval of the defendant or his manager, for he repeatedly states that when he made out the order he told Markowitz that it was not binding until it was confirmed. The appellees contend, however, that the mere fact that he was called "buyer" for the department in which he was employed was sufficient to warrant the plaintiffs or their agent in assuming that he had full authority to order the goods, and that the defendant cannot rely upon any limitations upon his authority of which the plaintiffs were not advised. It is said in *Lister* v. *Allen,* 31 Md. 543, speaking of the general authority rising from a general employment in a specific capacity, such as factor, broker, attorney, etc.: "A general authority of this kind empowers the agent to bind his employer by all acts within the scope of his employment, and that power cannot be limited by any private order or direction not known to the party dealing with the agent * * * But the responsibility of the principal to third persons is not confined to cases where the contract has been actually made upon his express or implied authority. It extends further and binds the principal in all cases where the agent is acting within the scope of his usual employment, or is held out to the public, or to the other party. as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority." In the case at bar Weinstein was not authorized to purchase goods for the defendant. His employment was limited in respect to purchases to making out orders for the goods needed in his department to be signed by the manager or the defendant, and there had been no dealings between the plaintiffs and the defendant from which they could infer that he had any further power. If Weinstein had in fact been employed as "buyer" for the defendant, with authority to purchase goods for the defendant, or if there had been any transactions between the plaintiffs and the defendant as would have justified the assumption by the plaintiffs that he was authorized to purchase on account of the defendant, the principal relied upon by the appellees

would undoubtedly apply and the plaintiffs would not be bound by any secret instructions of the defendant to his agent. But we know of no case holding that the mere fact that an employee is called a "buyer" clothes him with power to bind his principal by contracts wholly without the scope of his employment. The well recognized doctrine, that a general authority to an agent cannot be limited by private instructions not known to third persons dealing with him, certainly cannot be applied to a case where no such general authority exists. The general rule is that the power of an agent to bind his principal rests upon the authority conferred upon him by the principal, and persons dealing with an alleged agent are put upon inquiry as to the extent of his authority. The rule as to the apparent scope of an agent's authority is well stated in 31 *Cyc.* 1331, where it is said: "While as between the principal and the agent, the scope of the latter's authority, is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof; and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses and which the principal is estopped to deny. The apparent authority so far as third persons are concerned is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person who, in order to avail himself of his rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in violation

of private instructions, for such acts are within the apparent scope of his authority. An agent cannot, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority which his agent has conferred upon himself simply by his own representations express or implied. Although these rules are firmly established, their application to a particular case is extremely difficult. The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had under the circumstances conferred upon his agent." Applying this statement of the rule to the case under consideration, the evidence shows that the principal had done nothing to clothe Weinstein with the apparent authority to purchase goods on his account, and that the plaintiffs and their agent, without any inquiry as to the extent of his authority, and in entire disregard of the established usage and custom among department stores in Baltimore City, relied exclusively upon the bare fact that he was called the "buyer" for the department in which he was engaged. To hold a principal responsible for purchases made by an agent who was never authorized or permitted to make them, and where such purchases are wholly without the scope of his employment, would place every man in business at the mercy of his employees. It is said in a note in 31 *Cyc.* 1333, upon the authority of several cases there cited, that "apparent authority is the authority which the agent appears to have by reason of the actual authority which he has," and on page 1345 the same author says: "The general rule is that a principal is responsible for the purchases of his agent only when he authorizes him to make them, or when he permits him to make purchases knowing that the seller parts with his property on the responsibility of the principal, and not on the credit of the agent."

The appellees also contend that the existence of an agency, and the extent of the agent's powers are questions of fact for the jury, and that is the general rule where the authority of the agent is not conferred upon him by a written instrument. *Groscup* v. *Downey,* 105 Md. 273. But these facts, like all other facts, must be shown by competent evidence, and the burden is on him who assumes the affirmative to produce evidence from which the existence of an agent's power or authority to do a particular act may be properly inferred. In this case there is no conflict of evidence in regard to Weinstein's authority, and there is no evidence of any prior dealings between the plaintiffs and defendant, or of any conduct on the part of the defendant from which the plaintiffs could have assumed that his authority was other than that expressly conferred upon him. They dealt with him as the agent of the defendant for the first time without making any inquiry as to the extent of his authority, and we do not think that the mere fact that he was called the "buyer" of his department, when the plaintiffs' own evidence shows that he was not authorized or permitted to purchase goods for the defendant, was sufficient to justify a finding by the jury that the order in question was signed by an authorized agent of the defendant.

It follows from what we have said that the defendant's first prayer, which sought to withdraw the case from the jury on the ground that the evidence in the case was not legally sufficient under the pleadings to entitle the plaintiffs to recover, should have been granted.

In this view of the case it is not necessary to determine whether the case should have been taken from the jury upon the further ground that the evidence failed to show that the goods were shipped or delivered to the defendant in accordance with the terms of said order, or to consider the other propositions urged by the appellant.

*Judgment reversed with costs to the appellant without awarding a new trial.*