## Law Reporting Company, Appellee, v. S. W. Straus & Company, Appellant.

## Gen. No. 27,597.

AGENCY—*existence of implied authority as a question of law.* A corporation sued for the purchase price of a stenographic report of a certain official investigation is entitled to a directed verdict in its favor where the evidence shows the report in question to have been ordered by a clerk by a letter written on the company's letter-head and signed by the clerk individually, that such clerk had no express authority to bind the company or make purchases for it, that his duties were purely clerical, that neither he nor the company had had any previous dealings with plaintiff, and that the title "assistant to" the vice-president following his signature was assumed by him without authority and was descriptive of a clerical and not an official capacity.

Appeal from the Municipal Court of Chicago; the Hon. HOWARD HAYES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Reversed with finding of facts. Opinion filed November 8, 1922. Rehearing denied November 21, 1922.

GOTTLIEB & MARKHEIM, for appellant; HARRY MARKHEIM and HERBERT A. FRIEDLICH, of counsel.

WEST & ECKHART, for appellee; WILLIAM L. BOURLAND, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $1,239 rendered November 5, 1921, against defendant after verdict by the municipal court of Chicago in an action of the first class in contract.

In the year 1919, the plaintiff corporation was engaged in the reporting business in New York City, and the defendant corporation had an office in the City of Chicago and was engaged in purchasing and selling first mortgage bonds on improved real estate. During

said year plaintiff was designated as the official reporter of the proceedings of the Federal Electric Railways Commission, which conducted hearings in New York City on June 19, 1919, and in Washington, D. C., from July 15 to 25, from August 11 to 15, and from September 29 to October 4, 1919. On October 10, 1919, plaintiff caused a circular letter, headed by its usual letterhead, dated October 10, 1919, and signed by its secretary, F. W. Allen, to be mailed to electric railways and investment brokers throughout the country, one of which, it is claimed, was mailed to defendant at Chicago, as follows:

"FEDERAL ELECTRIC RAILWAYS COMMISSION.
Dear Sir:
We do not think it is exaggeration to say that none of the many recent investigations conducted by state and national authority has attracted more public interest than the one by this Commission, which was appointed by the President to study the situation of the country's electric railways and make recommendations for their relief.   *   *   *   The greatest interest is manifested by those most closely affected, the operators of such roads and the holders of their securities, many of whom are following every step of the proceeding with the greatest care. We are prepared to furnish promptly, at the rate of ten cents per folio, the complete official verbatim reports of the hearings; and persons desiring to give this matter the careful attention which its importance deserves are certain to find their work greatly facilitated by the use of these reports."

In October, 1919, one Leo J. Sheridan, twenty-two years of age, was a clerk in the employ of defendant and had been since January, 1919. One S. J. T. Straus was its vice-president, and Sheridan's duties were those of acting as a secretary for Straus. All mail received by defendant was first opened by a mail clerk, sorted, and distributed to the various departments. Letters which the mail clerk, under instructions, thought should receive the attention of Straus, and let-

ters addressed to Straus personally, were laid on Sheridan's desk, which was in an open space near the entrance to Straus' private office. Sheridan testified that when he entered defendant's employ Straus' stenographer was called his "secretary," and that he "assumed the title of 'Assistant to Mr. Straus'" to differentiate himself from her, although "Mr. Straus never gave me that title." He further testified as to his duties: "My work was entirely of a personal nature, opening Mr. Straus' mail, sorting it, and arranging it for his convenience in replying to it, seeing persons who came in to see him, and, if possible, directing them to some other officer of the company, keeping his correspondence in proper order in the files, and doing some clerical work of a personal nature for him. * * * He had instructed me that he did not want to receive circulars or circular matter. * * * I had the use of the stenographer when Mr. Straus was out of town or when he was not using her, and I occasionally dictated some letters to her. * * * I never dictated letters in answer to letters received by the company which had not previously been shown to Mr. Straus. If letters were to be answered by him, I might prepare the reply and he would sign it personally." He further testified that shortly after October 10, 1919, a letter from plaintiff was placed on his desk; that he read it, but seeing that it was a circular letter did not call it to Straus' attention; that he had never before heard of plaintiff and to his knowledge no prior correspondence or dealings had been had between it and defendant; that the contents of the letter attracted him and he laid it aside, thinking that he might himself write for a copy of the report at a later date for his own personal use; that on October 22 he dictated and personally signed and caused to be mailed to plaintiff in New York City the letter hereinafter mentioned and afterwards threw plaintiff's circular letter into the waste basket and never saw it

thereafter; that to the best of his recollection it was not exactly the same as the letter above set forth, though of the same general nature; and that his impression is strong that the letter stated that the cost of the report would be ten cents a copy instead of ten cents a folio. Sheridan's letter to plaintiff, received by it in due course of mail, is typewritten on the letterhead of defendant, wherein appears the name and address of defendant corporation and the words "Office of S. J. T. Straus, Vice-President." It is dated October 22, 1919, and is as follows:

"We thank you for your letter of October 10, in which you state that you are preparing your report of an investigation being made of the country's electric railways. As soon as this report is ready for distribution we will be very glad to receive a copy of it.

Very truly yours,

LEO J. SHERIDAN,

LJS:EM        Assistant to Mr. S. J. T. Straus."

Plaintiff, by Allen, its secretary, replied to Sheridan's letter on October 24, addressing the reply to *defendant*, which came to Sheridan's desk in the same manner as had the circular letter, as follows:

"Please accept our thanks for your letter of October 22, with order for one copy of the reports of the proceedings of the Federal Electric Railways Commission, which will have our careful attention."

Allen testified by deposition that, after plaintiff had received Sheridan's letter of October 22 and had mailed said reply to defendant, he "then had made a complete copy of the official report of the hearings before the Federal Electric Railways Commission held at the places above stated from June 19 to October 4, 1919"; that "this official report consisted of 6,195 pages and contained 12,390 folios"; that it was forwarded in two packages to defendant at Chicago by express on October 28; that on October 30 plaintiff mailed a bill for the same to defendant amounting to $1,239 (12,390 folios at ten cents per folio); and that

on November 5 plaintiff received a typewritten letter addressed to it, dated November 3, 1919, and signed "Leo J. Sheridan, Assistant to Mr. S. J. T. Straus." This letter was received in evidence.  It is to the effect that Sheridan, much to his surprise had received "two large packages enclosing very voluminous reports of the proceedings" of said commission; that he had not ordered such reports but only a "small prospectus or booklet" at the stated price of ten cents for a copy; and that he had sent back the packages.  On November 5, plaintiff wrote defendant, acknowledging receipt of Sheridan's letter, and saying in effect that it could not accept the return of the reports, and on November 17 again wrote defendant that the express company had offered delivery of the same and that plaintiff had refused to receive them, as it considered them defendant's property.

On April 26, 1920, plaintiff commenced the present action, claiming that defendant was indebted to it for the reports in the sum of $1,239, together with interest thereon.  Defendant, in its third amended affidavit of merits, denied that it was indebted to plaintiff in any sum, and averred, in substance, that defendant did not write or otherwise give to plaintiff the alleged acceptance, contained in Sheridan's letter of October 22, of plaintiff's offer in its circular letter of October 10; that the letter of October 22 was sent by Sheridan in his individual capacity, and not as defendant's agent, and without its knowledge or consent or that of any of its officers; and that Sheridan was a mere clerk and was without authority to make any purchases or enter into any contract on defendant's behalf.  At the conclusion of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict in its favor, but the motions were denied.  The court charged the jury orally and they returned a verdict finding the issues against defendant and assessing plaintiff's damages at the sum of $1,239, upon which

verdict the judgment appealed from was entered.

Various points are urged by counsel for defendant as grounds for a reversal of the judgment, but in the view we take of the case it will be necessary for us to consider only one, which is to the effect that the evidence does not show that Sheridan had any authority, real, apparent or implied, to bind defendant by his letter of October 22, accepting plaintiff's offer as contained in its circular letter of October 10, even assuming that said circular letter, as replied to by Sheridan, contained the expression that plaintiff was "prepared to furnish promptly, at the rate of ten cents *per folio,* the complete official verbatim reports of the hearings" of said commission, rather than an offer to furnish a report of said proceedings at the cost of ten cents *per copy,* as appears to have been Sheridan's impression at the time as to its purport. We think that the point is well taken. Sheridan's testimony discloses that he sought to obtain at a small cost for his own personal use, and not for defendant, a copy of what he thought might be an interesting and instructive report. He was a mere clerk in defendant's employ. The record does not disclose that he had any authority, either express or implied, to make any purchases for defendant or to incur any bills on its account. Nor does it show that either he or defendant ever had any previous dealings with plaintiff. He did not sign the letter of October 22 in the name of defendant, but in his own name. The addition of the words "Assistant to Mr. S. J. T. Straus" is descriptive of a clerical position rather than one having any official status. And the mere fact that Sheridan's letter was written on defendant's stationery cannot render it liable. We think that defendant's motion made at the close of all the evidence for a directed verdict in its favor should have been granted. In *Faber-Musser Co. v. Wm. E. Dee Clay Mfg. Co.,* 291 Ill. 240, 247, it is said: "Whether an agent has express authority to do a cer-

tain thing is a question of fact for the jury, but whether an implied authority arises from a certain state of facts is a question of law which should not be submitted to the jury by an instruction.'' In *Brager v. Levy,* 122 Md. 554, 561, it is said: ''To hold a principal responsible for purchases made by an agent who was never authorized or permitted to make them, and where such purchases are wholly without the scope of his employment, would place every man in business at the mercy of his employees.'' In the present case it does not appear that Sheridan had any express authority from defendant to order the reports, for the alleged value of which defendant is sued, and we are of the opinion that from the facts disclosed no implied or apparent authority can be inferred. Accordingly, the judgment of the municipal court must be reversed.

*Reversed with finding of facts.*

BARNES, P. J., and MORRILL, J., concur.

Finding of facts. We find as ultimate facts in this case that Leo J. Sheridan had no authority, either express, implied or apparent, to order the reports in question on defendant's account so as to render it liable to plaintiff for the alleged value thereof, and that defendant did not accept the reports when received.