## METROPOLITAN CLUB *v.* HOPPER, McGAW & COMPANY, INC.

*Social Club—Supplies to Restaurant—Liability by Estoppel— Notice to Agent.*

The fact that the financial secretary of an incorporated social club, acting without authority, directed that goods supplied to a restaurant, on the club premises, but owned by another corporation, should be charged to the club, did not make the club liable for the price of the goods.                    p. 670

As a general rule, the power of an agent to bind his principal rests upon the authority conferred upon him by the principal, and persons dealing with an alleged agent are put upon inquiry as to the extent of his authority.                    p. 671

A social club was affected with knowledge of accounts, for goods charged against the club, which were received in its mail by its bookkeeper, whose duty it was to open all mail and communicate its contents to the club's officers.                    p. 671

Evidence that goods supplied to a restaurant conducted on the premises of a social club were so supplied because the seller was told by the restaurant management that they were to be charged to the club, in the name of which such management gave orders for the supplies and receipted therefor, and that

the seller was induced to continue supplying the goods by the fact that the monthly bills, sent by it to the club, were merely turned over by it to the restaurant management, without any communication with the seller, *held* to justify a verdict against the club for the price of the goods.                    pp. 671-674

Whenever the circumstances are such that a party learns, or is charged with knowledge, that he has been placed by the wrongful act of a third party in such a relation with a second party that a reasonable person would perceive that, if he did not use ordinary care with reference to these circumstances, he would as a natural consequence cause danger of injury to the property of the second party, it becomes the first party's duty to act so as to avoid such danger.                    p. 673

*Decided December 7th, 1927.*

Appeal from the Baltimore City Court (OWENS, J.).

Action by Hopper, McGaw & Co., Inc., against the Metropolitan Club. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Britain Winter,* for the appellant.

*W. Lester Baldwin* and *C. Arthur Eby,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Hopper, McGaw & Company, Inc., appellee, brought an action in assumpsit against the Metropolitan Club, another corporation, appellant, to recover for groceries and supplies delivered to the Restaurant Company, a third corporation engaged in conducting in Baltimore City a restaurant on the premises owned by the Metropolitan Club. The account covered a period beginning on October 30th, 1925, and closing on March 20th, 1926, when the aggregate amount of the numerous separate charges was $1,521.66, which had been

reduced by credits to the sum of $723.73. The first credit was on January 9th, which paid the account to the preceding December 1st. The trial court excluded all the items of the account after February 8th, on the ground that these were not chargeable against the appellant, and the full amount, with interest, of the goods sold during the intermediate period was $538.14, which was the amount of the verdict and judgment in favor of the appellee. It is admitted that the items and amounts of the account are correct. The record shows clearly that the Restaurant Company bought the goods, received and used them, and that no claim can be enforced against the appellant unless there were legally sufficient evidence tending to establish that the appellant became bound on the theory of estoppel.

A number of years ago the Metropolitan Club was incorporated for the social pleasure and musical entertainment of its members. A part of its premises was leased as Lehman's Hall, and, for the purpose of increasing its revenue, the club built and equipped a restaurant, which it leased on October 25th, 1925, to the Restaurant Company for the purpose of operating a public grill room and café from November 1st, 1925, to October 30th, 1935, with the privilege of renewal for a like period, and at a yearly rental of five *per centum* on the gross annual receipts from the business conducted upon the premises up to $25,000.00, with the rate *per centum* specifically increasing according to a graduated scale as the gross earnings would grow.

While the premises were being prepared for occupancy by the tenant, J. H. Tunnecke, an outside salesman for the appellee, went early in October, 1925, to the Metropolitan Club for the purpose of soliciting an order for the Café des Arts, which was the name of the new restaurant. At this time, the Restaurant Company had its temporary office in the room where the club conducted its affairs. Tunnecke had been a member of the club, and on this occasion saw there Edward A. Strauff, its then president, who introduced him to E. B. McCahn, who, Strauff informed the salesman, had charge of the restaurant. McCahn was the president

of the board of directors of the Restaurant Company and told the salesman to come back later. When Tunnecke returned about a week afterwards, he went to the office of the Metropolitan Club, where he found Miss Jean Hill, who was the clerk and bookkeeper of the club, McCahn, and J. J. Gibbons, the assistant of McCahn in the running of the restaurant. Gibbons approached the salesman, who said that he had come in reference to the order for the new restaurant, and thereupon Gibbons went to McCahn, spoke to him, came back and asked if the salesman were a member of the club. Tunnecke replied that he was not, but might join. Gibbons rejoined McCahn, and went out with another salesman. Shortly after their leaving, McCahn called Tunnecke, and said that there was nothing needed from the appellee, but, when reminded that certain mineral water could only be obtained through his house, McCahn directed the salesman to tell Gibbons to give the order if the supplies suggested were needed. The order was given, and then the salesman, desiring to know the buyer, asked Gibbons the direct question, and was informed that the account was to be opened and charged against the appellant; and the written purchase order given was on an order blank of the Metropolitan Club, and at its foot, under the words "charge same to our account," followed this subscription: "The Metropolitan Club of Baltimore City, By . . . . . . . ., Approved . . . . . . . ."

The Metropolitan Club had been a customer of the appellee from September 29th, 1922, to November 16th, 1923, and its financial responsibility was known and satisfactory to the appellee; so, when the salesman returned the order to his principal, it was at once accepted, the account opened against the club, and the first and all subsequent orders, until after February 8th, the evidence on the part of the appellee tended to prove, were fulfilled on the credit of the Metropolitan Club.

From the first order until that of February 8th, the evidence of the appellee tended to show that the orders were given in the name of the appellant; that with every delivery there was sent a ticket or duplicate order showing the party

charged and the articles sent with their prices, and that this ticket was returned with a receipt purporting to be signed by the appellant. As a matter of fact, the evidence is that the orders and the receipts given in the name of the appellant were the wrongful acts of the Restaurant Company by its own employees, and that the appellant neither ordered nor authorized a single order; nor received nor receipted for any of the goods bought; nor authorized the use of its name or credit in any of the particulars mentioned; but of all these things the testimony on the part of the appellee, although contradicted, tends to establish that the appellee knew nothing until after February 8th.

The original and subsequent sales of this current account were all with the proper officers of the Restaurant Company. Gibbons, who gave to the salesman the information upon which the appellee was misled into believing that the appellant was the buyer, was in no way connected with the club. The salesman knew that the Café des Arts was a public restaurant, but he did not know and did not inquire who was its proprietor, and neither he nor any other representative made any inquiry to ascertain who was the principal of Gibbons, or whether he was authorized to make the purchase and to charge the account against the Metropolitan Club. The circumstance that McCahn, the president of the Restaurant Company, was, also, at the time of these transactions, the financial secretary of the club, would not have bound the club even if, in buying goods for the Restaurant Company, McCahn had actually instructed Gibbons to have these goods improperly charged to the account of the club. Neither McCahn, as the financial secretary or otherwise, nor any other officer of the club, was shown to have had authority either to buy goods, or to pledge, in any form, the credit of the club for goods bought or to be bought for the use of the Restaurant Company. As was pertinently said in *Brager v. Levy,* 122 Md. 554, at page 561: "To hold a principal responsible for purchases made by an agent who was never authorized or permitted to make them, and when such purchases are

wholly without the scope of his employment, would place every man in business at the mercy of his employees."

The general rule is that the power of an agent to bind his principal rests upon the authority conferred upon him by the principal, and persons dealing with an alleged agent are put upon inquiry as to the extent of his authority. *Supra,* 560. No one ever made this inquiry, and the appellant could not have recovered were it not for circumstances now to be stated.

During the entire period that the account was running, the appellant had a clerk and bookkeeper in charge of its office. In addition to her position as bookkeeper, it was her duty to open all mail and assort it, and to deliver the accounts rendered against the club to the officers of the club, so that these accounts could be submitted to the board of governors of the club for payment, repudiation, or other action at its weekly meeting. The appellee on the first of every month mailed, and the appellant received in the mail, a detailed statement or itemized account of the goods which had been charged by the appellee against the appellant. These monthly accounts came into the hands of the bookkeeper, who testified that she saw a number of these statements, but that she handed them at once to the bookkeeper of the Restaurant Company. Her explanation of this course was that she knew the bills were owing by the Restaurant Company, as they were for goods which the Restaurant Company used but the club did not. However, the duty of her employment required her to submit these accounts rendered to the executive officers of the club for appellant's appropriate action, and so the delivery of these accounts to her was equivalent in law to a delivery to the club, and her knowledge of the contents of the accounts became the knowledge of the club. Her position as bookkeeper required her to keep and know the accounts of her employer, and in addition she had the further duty of receiving, opening, assorting, and delivering her principal's mail, for the purpose of communicating its contents to the proper executive officers of the club. Under such circumstances the court will impute the knowledge of the agent to the principal by a presumption so strong that it cannot be

repelled. The appellant, by delegating to its agent to do what itself might do by its executive officers, cannot obtain greater rights than if it had done the thing through its authorized executive officers. This consequence must follow notwithstanding the conduct of the agent may have been due to carelessness or to a mistake in judgment, and the officers of appellant may have been ignorant of her action. The business of keeping the accounts and of receiving and delivering the opened mail, so the appellant through its executive officers would have immediate knowledge of all communications to it, was exclusively entrusted to the bookkeeper, and required her active and careful agency in its performance. Having selected and reposed in her this duty, it is but just that her employer should be held responsible for the manner in which she discharged the business of her employment rather than an innocent third party should be left to bear the injury of her default committed within her employment. A contrary principle would render unstable the foundation of many common commercial transactions, and tend to destroy that confidence in the happening of things according to the ordinary course of business affairs, which is so materially the basis of trade. *Tome v. Parkersburg R. Co.,* 39 Md. 36, 65, 70-71, 76, 80; *Bower on Actionable Misrepresentation,* pp. 28, 29; *West. Md. R. Co. v. Franklin Bank,* 60 Md. 36, 45-48; *Schwind v. Boyce,* 94 Md. 510, 519; 2 *Mechem on Agency* (2nd Ed.), secs. 1813, 1827, 1828, 1831.

The legal effect of this account thus repeatedly rendered, and of the imputation to the appellant of the knowledge of its agent, was to apprise the appellant that certain goods had seemingly been ordered by and delivered to it by the appellee at the time and for the prices stated, and, by monthly repetition of these accounts, the further information was imputed that the transactions were continuous and the amount involved large, and that a deceit was being practiced upon the seller, which could be successfully prosecuted while the putative buyer kept unrevealed the knowledge which he possessed, but of which the seller was ignorant. It is true the appellant was wronged by the fraudulent use of its name

to secure the goods on credit, but the appellee was, also, wronged by the misrepresentation through which the goods had been secured and credit given, and the fundamental difference in the situation of the two innocent parties was that the appellee did not know of the wrong, but the appellant, by imputed knowledge, did. Whenever the circumstances are such that a party learns, or is charged with knowledge, that he has been placed by the wrongful act of a third party in such a relation with a second party that a reasonable person would perceive that, if he did not use ordinary care and caution in his own conduct with reference to these circumstances, he would as a natural consequence thereof thereby cause danger of injury to the property of the second party, it becomes the duty of the first party to act so as to avoid such danger. In the instant case, there is evidence tending to show that the silence and inaction of the appellant in respect to the monthly accounts rendered naturally led, and did lead, the appellee into the belief that the appellant was the buyer of the goods charged and delivered in its name, and thereby induced the appellee to act upon this mistaken belief, to its prejudice, by making subsequent similar sales on the credit of the appellant and the faith that it was the buyer. The silence and inaction of the appellant, if true, were, under all the circumstances stated, culpably careless according to the usual standard of business methods, and equivalent to a representation and acknowledgment to the appellee of the appellant's liability. The principal cannot be excused because the agent failed in her duty to the principal. Her default makes the principal chargeable to the same extent as if she had not been careless, but had communicated to her principal the contents of the monthly statements by making a delivery of them, as she was charged to do by the duty of her employment. *Hardy v. Chesapeake Bank*, 51 Md. 562, 589, 590-593; *Andrews v. Clark*, 72 Md. 396, 433-438; *Eareckson v. Rogers*, 112 Md. 160, 169-170; *Carmine v. Bowen*, 104 Md. 198, 204; *Carroll v. Manganese Safe Co.*, 111 Md. 252, 258, 259; *First National Bank v. Wolfe*, 140

Md. 479, 485, 486; *Ewart on Estoppel,* 105, 40, 41, 136-140. Compare *Biggs v. Stueler,* 93 Md. 100, 112; *Bridges v. Miller Rubber Co.,* 150 Md. 1, 9; *Ryan v. Canton Bank,* 103 Md. 428, 450.

The evidence of appellant's bookkeeper was that, upon the receipt of the first erroneous account, and repeatedly thereafter, the bookkeeper of the Restaurant Company, in her presence, notified the appellee of the error, and that the account must be charged to the Restaurant Company, and there was other testimony to the effect that the appellee had knowledge or was put on inquiry. But this court has nothing to do with the weight of the evidence, and, inasmuch as there was other testimony to the effect that the appellee did not have notice until after February 8th, an issue of fact was raised, and we must assume, for the purposes of this appeal, that the appellee's evidence on this point was correct, and the trial court could not have granted the instructions, offered by the appellant, taking the case from the jury.

The ruling of the court on the prayers demurring to the evidence was correct, and, finding no reversible error on the other rulings of the court, the judgment below must be affirmed.

*Judgment affirmed, with costs.*