P. FLANIGAN & SONS, INC. *v.* CHILDS, ET AL.

[No. 415, September Term, 1967.]

648

*Decided December 6, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*John C. Evelius,* with whom was *Lee M. Miller* on the brief, for appellant.

*A. Thomas Beckman* for appellees.

SINGLEY, J., delivered the opinion of the Court.

P. Flanigan & Sons, Inc. (the Paving Contractor), the appellant here and plaintiff below, is engaged in the highway and road construction business. The appellees and defendants below are John C. Childs, Sr., Gerald H. Cooper and Thomas E. Kelly, Jr., who were sued in their individual capacities and as members of a partnership known as Underwood Associates (the Underwood Partnership).

On 28 February 1963, the Underwood Partnership transferred to Underwood Development Corporation (the Underwood Corporation) a two-acre tract located at Underwood Road and Winston Avenue in Baltimore. At the time of transfer, all of the stock of the Underwood Corporation was owned by Childs, Cooper, Kelly and their wives. After the transfer, an oral agreement was entered into between the Underwood Corporation and Giardina Construction Company (the Construction Company) for the construction of 32 apartment units on the tract. Construction commenced about 15 March 1963.

It appears that the tract was the only asset of the Underwood Partnership and that once the conveyance had been made, the partnership was regarded by the partners as having been terminated, although there was no formal dissolution.

There was uncontroverted testimony below that the oral agreement contemplated that the Construction Company would build the project without profit, and that upon completion, Harry Giardina, president of the Construction Company, would receive a 25% interest in Underwood Corporation.

Sometime in June, 1963, Pierce J. Flanigan, president of the Paving Contractor, according to his testimony, received "* * * a telephone call from either Mr. John Kreiner or Mr. Harry Giardina asking me to come out and look at this Underwood Apartment project and submit a price for the asphalt paving of the parking areas and the roadways which led up to the apartment buildings." Mr. Flanigan, who said that he knew, and had previously done work for Mr. Kreiner and Mr. Giardina, when they were employees of another contractor, went to the site; met Mr. Kreiner and perhaps Mr. Giardina; and was given a site plan prepared by the project's architect on 3 July 1962 for "Underwood Associates, Owners," which Flanigan used in the preparation of his company's bid. Flanigan said that Kreiner told him that the thickness of the paving would have to be discussed with the owners, and this was done.

On 19 June 1963, the Paving Contractor submitted a written proposal addressed to "Underwood Associates, 1404 Rome Road, Baltimore 27 Maryland, attention Mr. John Kreiner" to do the job for $3,613. The original proposal, according to Mr. Flanigan, was hand-delivered to the job site, but on the same day, at the request of a person on the site whose identity was unknown to Mr. Flanigan, a copy of the proposal was mailed by the Paving Contractor to 1404 Rome Road, where the office of the Construction Company was located. Flanigan was instructed by Kreiner to proceed with the work, which was completed sometime in July. On 24 July 1963, the Paving Contractor billed Underwood Associates at 1404 Rome Road.

The bill was not paid. In December of 1963, a trustee was appointed for the creditors of the Construction Company. On 8 May 1964, the Paving Contractor filed its claim for $3,613 in the receivership, upon which there was ultimately a distribution of $59.09. In June of 1964, Flanigan learned for the first time that the owner of the project was the Underwood Corporation, and not the Underwood Partnership, as he had

assumed. By this time, however, Underwood Corporation's mortgage on the project had been, or was about to be foreclosed, since the property was sold at public auction on 11 June 1964.

On that day, the Paving Contractor entered suit in the Court of Common Pleas of Baltimore City against the members of the Underwood Partnership as individuals and as members of the firm, and prayed a jury trial. When the case came on for trial, the jury returned a verdict for $3,613 against the defendants, who promptly moved for a judgment *n.o.v.* This motion was granted. Judgment was then entered in favor of the Underwood Partnership for costs. The correctness of that action is the only question presented by this appeal.

The thrust of the Paving Contractor's argument is that the members of the Underwood Partnership either clothed Giardina with apparent authority to contract for the partnership's account or alternatively are estopped from denying that he was their agent. In support of this contention, they say that when Kreiner gave to the Paving Contractor a site plan which identified the Underwood Partnership as owner and said that he needed to discuss the thickness of the paving with "the owners", a factual situation had developed with the knowledge or permission of the Underwood Partnership which led the Paving Contractor to assume that it could look to the partnership for payment.[1]

The trial judge did not see it quite this way, and neither do we. For the Paving Contractor to hold the Underwood Partnership, as principal, answerable for the obligation incurred by Giardina or by the Construction Company, as its agent, there must be proof of an agency relationship. The lower court found the record wanting in this respect, and we agree.

Gerald H. Cooper, one of the defendants and a member of the Underwood Partnership, was called as an adverse witness by the Paving Contractor. He testified that the partnership was formed about 29 May 1962 and continued until 28 Feb-

---

1. In their briefs, both parties seem to agree that there was testimony that Kreiner told Flanigan to send the bid to "the owners" but a careful reading of the record indicates that this testimony was stricken.

ruary 1963; that there had been no formal agreement of partnership, and that there were no articles of dissolution; that the Construction Company had been employed by the Underwood Corporation as general contractor; and that Giardina had no authority to hire individual subcontractors on behalf of the Underwood Corporation.

Parts of Mr. Cooper's testimony are of particular interest:

"Q. Is it fair to say that Mr. Giardina had the authority to cause the parking lot area to be paved?

"A. Not on behalf of Underwood Development Corporation. Mr. Giardina was hired—His Corporation was hired to do the building and any acts that he performed were on behalf of the Harry B. Giardina Construction Company.

"Q. I see. Well now, as far as Mr. Giardina, regardless of who he was working for, he had the authority to cause the job of paving this parking lot to be done, did he not?

"A. Yes, he had authority to do it in his capacity with the Harry B. Giardina Construction Company. He dealt with all the subcontractors, some thirty-five or thirty-six. We never had any dealings with any of them.

"Q. Did you or either of your partners have knowledge of Mr. Flanigan working on the job at the time he was working on the job?

"A. I had no personal knowledge of Mr. Flanigan doing any work on the job as I had no knowledge of any of the other subs individually doing any work. I knew the job was being done."

Later in his testimony, Mr. Cooper, who is a lawyer, summed up:

"The Underwood Associates never had any dealings with anyone concerning this project other than the architect. All the dealings with the subcontractors were by Harry B. Giardina [Construction Company]. Underwood Development Corporation dealt with

Harry B. Giardina Construction Company. We had no dealings with the subcontractors. Not one.* * *"

\* \* \*

"* * * Underwood Associates had no dealings with Mr. Giardina. All the dealings Mr. Giardina had were with Underwood Development Corporation and the stockholders."

Maryland Code (1957, 1965 Repl. Vol.) Art. 35, § 9 permits the calling of an adverse party as a witness. When an adverse party is called by an opposite party, the opposite party is bound by the testimony of the adverse party unless rebutted, contradicted or discredited. *Giba v. Bastian,* 246 Md. 508, 229 A. 2d 93 (1967) ; *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231 (1966) ; *Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237 (1966) ; *Vokroy v. Johnson,* 233 Md. 269, 196 A. 2d 451 (1964) ; *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958) ; *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721 (1958) ; *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109 (1957). This is not to be interpreted, however, as meaning that the jury must accept such statements blindly, particularly if the testimony contains improbabilities, or there are reasonable grounds for concluding that it is erroneous. *Wood v. Johnson; Plitt v. Greenberg; Lehmann v. Johnson; Proctor Electric Co. v. Zink,* all *supra.*

In the usual case, the existence of an agency relationship is a question of fact. *Heslop v. Dieudonne,* 209 Md. 201, 206, 120 A. 2d 669 (1956). We have also held in cases involving the presumption of agency from ownership that whether evidence offered in rebuttal of the presumption is so slight that it is insufficient for the consideration of the jury, or so conclusive as to require a directed verdict for the defendant, must depend upon, and be decided by, the facts developed in each individual case. *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 215, 159 A. 2d 823 (1960).

We can only assume that the jury, in reaching its verdict chose to reject Cooper's testimony on grounds of credibility, since it was uncontroverted by other evidence and no reasonable ground existed for concluding that it was erroneous.

In considering a motion for a judgment *n.o.v.,* the evidence and the reasonable inferences to be drawn from it must be considered in the manner most favorable to the plaintiff. *Wheeler Transportation Co. v. Katzoff,* 242 Md. 431, 435, 219 A. 2d 250 (1966); *Lehman v. Balto. Transit Co.,* 227 Md. 537, 540, 177 A. 2d 855 (1962); *Smith v. Bernfeld,* 226 Md. 400, 405, 174 A. 2d 53 (1961); *Zeamer v. Reeves,* 225 Md. 526, 530, 171 A. 2d 488 (1961). The granting of the motion was, in effect, a granting of a motion made earlier for a directed verdict. *Lewis v. Accelerated Transport-Pony Express, Inc.,* 219 Md. 252, 255, 148 A. 2d 783 (1959). In this posture of the case, the question is, were the evidence and the inferences to be drawn therefrom sufficient to require the submission to the jury of the issue as to whether either Giardina or the Construction Company was the agent of the Underwood Partnership.

For the Paving Contractor to have prevailed against the Underwood Associates, it must have produced evidence sufficient to establish that Giardina or the Construction Company was the agent of the partnership under a doctrine of apparent authority, Restatement (Second) *Agency* § 8 at 30 (1958); Mechem, *Agency* § 720 at 509 (2d Ed. 1914), or that: (i) the circumstances which the partnership created, or permitted to be created, amounted to a manifestation by the Underwood Partnership that Giardina or the Construction Company was its agent, and that (ii) the partnership was then estopped from denying the agency, Restatement, *op. cit.,* § 8B at 38; Mechem, *op. cit.,* § 722 at 510-11. For a general discussion, see 3 Am.Jur.2d *Agency* §§ 73-76 at 475-81 (1962).

The Maryland cases have not always drawn a clear line of demarcation between the doctrine of apparent authority and the theory of agency by estoppel, *Reserve Ins. Co. v. Duckett,* 240 Md. 591, 600, 214 A. 2d 754 (1965), nor have the cases in other jurisdictions, Restatement, *op. cit.,* Appendix § 8 at 41, 42. Professor Mechem has recognized the inconsistency of a finding of apparent authority in a case where there has been no proof of an agency relationship:

> "Unless the conduct therefore is such as to raise an inference of agency in fact [estoppel], or unless the act

can be treated as the direct act of the principal [express authority], it is difficult to see how the act can be sustained as the act of an agent, where the person who did it was not an agent of the alleged principal." Mechem, *op. cit.*, § 721 at 510.

We have held that a statement made by an agent will not bind his principal until an agency is established and then only if the statement is within the scope of the agency, *Deane v. Big Spring Distilling Co.*, 138 Md. 388, 392-93, 113 A. 891 (1921), and that:

> "* * * An agent cannot, however, enlarge the actual authority by his own acts without some measure of assent or acquiescence on the part of his principal, whose rights and liabilities as to third persons are not affected by any apparent authority which his agent has conferred upon himself simply by his own representations express or implied." *Brager v. Levy*, 122 Md. 554, 561, 90 A. 102 (1914).

*Accord, McClure v. E. A. Blackshere Co.*, 231 F. Supp. 678, 685 (D. Md. 1964).

At the same time, we have recognized that a person sought to be held as principal may create by his conduct an agency which he is estopped from denying, provided that the acts of the principal were known to and relied upon by the claimant. *Abuc Trading & Sales Corp. v. Jennings*, 151 Md. 392, 411, 135 A. 166 (1926) ; Restatement, *op. cit.*, § 8B at 38.

It is nearly axiomatic that one dealing with an agent must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers. *Prince George's Club, Inc. v. Carr, Inc.*, 235 Md. 591, 609, 202 A. 2d 354 (1964) ; *Chesapeake Supply & Equip. Co. v. Manitowoc Engineering Corp.*, 232 Md. 555, 565, 194 A. 2d 624 (1963) ; *Metropolitan Club, Inc. v. Hopper, McGaw & Co.*, 153 Md. 666, 139 A. 554 (1927) ; *Brager v. Levy, supra; Lister v. Allen*, 31 Md. 543 (1869).

If we apply these general principles to the facts before us, we conclude that the motion for judgment *n.o.v.* was properly

granted. The burden of proving an agency is on the person who seeks to rely on it. If an agency relationship is to be established between Giardina or the Construction Company and Underwood Associates, the evidence offered by the Paving Contractor lent support to nothing other than an agency by estoppel. Kreiner handed Flanigan a site plan which identified Underwood Associates as the owner. The site plan was nearly a year old. Flanigan was an experienced contractor. If we assume that Kreiner did tell Flanigan that the bid was to be submitted to the owners, normal curiosity would have suggested further inquiry: Why was the bid not to be sent to the general contractor? Who were the owners? What was their address? Had there been a change in ownership since the preparation of the site plan? The reasonable diligence and prudence referred to in the cases would have required no less.

Proof that Kreiner had a site plan in his possession; that the site plan identified the Underwood Partnership as the owner, and that Flanigan was told that the thickness of the paving would be discussed with the owners, was not, as we see it, sufficient proof of agency to take the case to the jury. It is common knowledge that plans and drawings are freely circulated in the construction industry and that possession of them by a contractor, a subcontractor, a job superintendent or a prospective bidder is of itself no manifestation of an agency, and that details must be discussed with an owner is not unknown to independent contractors. Additionally, the Paving Contractor has failed to prove that the Underwood Partnership was even aware that its proposal had been submitted or that the partnership knew who was doing the paving. In fact, Flanigan said that he had met Childs, one of the partners, on the job, but was unable to identify him in the courtroom.

Moreover, the Paving Contractor failed to meet the burden that it knew of the alleged acts of the principal and had relied, to its prejudice, on an agency relationship which it assumed to exist; *Hobdey v. Wilkinson*, 201 Md. 517, 526, 94 A. 2d 625 (1953); *Abuc Trading & Sales Corp. v. Jennings, supra,* or had changed its position in reliance thereon. Restatement, *op. cit.,* § 8B at 38. There was no testimony that the Paving Contractor would not have dealt with Giardina, whom it knew, and

had dealt with before, or that it bid on the job in reliance on the responsibility of the Underwood Partnership. As a matter of fact, the reasonable inference is to the contrary.

We do not reach the Underwood Partnership's contention that the Paving Contractor should be charged with constructive notice of the land records which disclosed the ownership of the project. *Compare Hobdey v. Wilkinson, supra.*

The partnership would have us rule that when the Paving Contractor filed a claim in the Construction Company receivership, it elected a remedy which barred a subsequent action against the partnership. We neither reach this point nor intend to imply that the doctrine of election of remedies is properly applicable to a principal-agent relationship, where the principal is disclosed or partially disclosed. Maryland Code (1957, 1968 Repl. Vol.) Art. 50 § 6; *Wheaton Lumber Co. v. Metz,* 229 Md. 78, 181 A. 2d 666 (1962); Restatement, *op. cit.,* § 184(1) at 417 and Comment d at 418. If the filing of the claim is to have any significance, it should be taken into account (as the lower court did) in equating the claim of agency by estoppel with the evidence that the Paving Contractor attempted to assert, unsuccessfully, as it turned out, a mechanics' lien against Underwood Corporation. There is no explanation why the Paving Contractor originally billed the Underwood Partnership, but then looked for payment first to the general contractor on the job and later to the owner of the property.

Since there was insufficient evidence to support the jury's verdict, we find no error in the entry of the judgment.

*Judgment affirmed; costs to be paid by appellant.*