STATE, USE OF RIDGWAY, ET AL. *v.* CAPITAL TRANSIT COMPANY

[No. 103, October Term, 1949.]

*Decided March 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Alger Y. Barbee* and *Edward S. Northrop,* with whom was *Arthur G. Lambert* on the brief, for the appellants.

*Paul R. Connolly,* with whom were *George D. Horning, Jr.,* and *Robert Peter* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

On the night of October 21, 1947, William B. Ridgway attended a union meeting in Washington. Afterwards, about 11:45 P. M., he left in an automobile driven by

Mr. Richard H. Watts for Hyattsville. On the way Mr. Ridgway and Mr. Watts stopped at a tavern for about two hours and had "a couple of drinks." They arrived near Stop 12 of the appellee, Capital Transit Company, which is in front of the County Building on Rhode Island Avenue, Hyattsville, shortly before 1:50 A. M. in the early morning of October 22nd. Mr. Ridgway got out of the automobile for the purpose of boarding a north-bound streetcar to be carried home.

Appellee's double track at that point runs generally north and south along the east side of Rhode Island Avenue. Appellee's right of way over which these double tracks run is separated from Rhode Island Avenue by a cement curbing. One track is for northbound and the other for southbound cars. Electricity to operate the street cars was supplied by overhead wires on metal supports which are attached to trolley poles set between the north and southbound tracks and located about four feet from the nearest rail of each track. There was no sidewalk on the side of Rhode Island Avenue adjoining these tracks but the paved roadway is separated from the southbound tracks by the curb. The double tracks are of open T-rail construction and fastened to expose cross ties. For quite a distance north and south of Stop 12 appellee's right of way adjoins the right of way of the B. & O. (Baltimore and Ohio) Railroad Company on which there are railroad tracks. The two rights of way are separated by a high iron fence which prevents pedestrians at Stop 12 from crossing from appellee's right of way to the B. & O. right of way. On the east side of the B. & O. tracks, about opposite Stop 12 is the B. & O. Passenger Station. A subway entrance runs from the east side of appellee's right of way under the B. & O. tracks and into that railroad's passenger station. There was a walkway at Stop 12 from the east curb to Rhode Island Avenue across appellee's right of way to the subway entrance. This pedestrians' walkway con-sists of a filling between the rails of macadam and gravel and is used by persons intending to board appellee's

northbound streetcars and others who may intend to use, or have used, the pedestrians' subway under the B. & O. railroad tracks. There was light on a pole between appellee's tracks and the B. & O. tracks 16½ feet from the pole marked "Stop 12." There was also a light at the stairway connecting with the tunnel under the B. & O. tracks. Visibility was average.

Mr. Ridgway, plaintiff's decedent, was struck and killed by appellee's southbound streetcar, the last southbound car that night, at about 1:50 A. M. on the morning of October 22nd. He was killed on the southbound streetcar track, walking from east to west. Having intended to board the northbound car he had previously crossed the southbound streetcar tracks. Why he attempted to re-cross the southbound tracks is unknown.

Suit was entered by plaintiff's decedent against appellee for this fatal accident. The case was tried before the trial judge and a jury. At the end of the plaintiff's case the trial judge granted appellee's first and second prayers and directed a verdict for the defendant. From a judgment on that verdict the appellant appeals.

Appellee's first prayer asked for a verdict on the ground of legally insufficient evidence, and the second prayer asked for a verdict for the reason that the deceased was guilty of contributory negligence as a matter of law. Appellant claims that there was sufficient evidence of primary negligence on the part of the appellee to justify the submission of the case to the jury, also that the deceased was not guilty of contributory negligence as a matter of law. Appellant also contends that errors were committed in rejecting certain evidence offered by plaintiff.

There were only two witnesses to this accident. One was appellee's motorman, John T. Gregory, and the other, John J. Butler, a passenger in the streetcar. Gregory was not called to testify. Butler at the trial of the case called by the appellant, testified substantially as follows. He was seated in the front seat inside the door on the right hand side, about 5 feet from the front of the

streetcar, which he had boarded at stop 15. The car was bound south toward Washington. There were lights on the streetcar. The streetcar slowed up at stop 14 momentarily. It approached stop 13A. "He hit stop 13 but there was no one there." He opened the throttle and made the car go faster. He said from stop 13 "the car was going as fast as it could." On cross examination he said he first saw the deceased at stop 12 when the car was 15 feet from him. At that time the streetcar was moving around 25 to 30 miles an hour, in his estimation. As soon as he saw the deceased he said, "Damn, there is a man." When he said this the motorman threw on the brakes. He could feet the effect of the brakes, "it pulled me forward a little bit." He does not remember whether the motorman sounded any warning. The pedestrian did not stop, did not look up but walked across the track. Lights were on inside the streetcar. There was a headlight on the streetcar but it was dim. The man was walking from left to right as he looked at him. When he first saw the pedestrian "he stepped from behind the pole toward the streetcar track." The pedestrian was from 6 to 8 feet from the front of the streetcar when he stepped from behind the pole and about a step from the streetcar track. He did not indicate that he saw or heard the streetcar. He kept the same gait. When he first saw the deceased he was about a step from the left rail of the track on which the streetcar was running. "He was walking, he wasn't standing up." "He was walking slowly." Although the lights were on in the car the motorman had failed to draw the curtain back of him. Decedent was struck by the right front corner of the streetcar.

While testifying for the plaintiff it was evident that Butler did not intend to testify as appellant's counsel expected. Shortly after the accident Butler had given a statement to the investigator for the appellee. He had also testified at the coroner's inquest on November 26, 1947. On May 12, 1949, 13 days before the trial of the case on May 25, 1949, he had been interviewed by

appellant's attorney at the scene of the accident. There was some conflict between his testimony at the trial of this case, and in the statements and interviews given to the various attorneys. For instance, when he was interviewed by appellant's attorneys on May 12, 1949, at the scene of the accident and stepped off the distance, he told those attorneys that the deceased was 24 strides from the front of the streetcar when he first saw the deceased. At that time he also said the speed of the car was between 30 and 35 miles per hour. Of course, this was over 18 months after the accident happened. He said that he told the attorneys on May 12th that "when I went down there I couldn't remember as it happened step by step but I would do the best I could." He also stated that on the morning of the trial of this case appellant's counsel let him read his former testimony which he had given in the police court at Hyattsville, and he then told appellant's attorneys before he was called to the witness stand that he had made some mistakes in the statements he made to them. While on the witness stand he said that when he testified at the hearing on November 26, 1947, his recollection was much fresher than when he went out with appellant's attorneys on May 12, 1949. The reading of the testimony refreshed his recollection. A police officer testified that the distance between the point of impact and where the streetcar was stopped was 109 feet.

Mr. Theodore F. Vollten was called as a witness by appellant and he testified that the distance between the rails of the southbound tracks was 5 feet 2 inches and the distance from the pole marked "12" to the west rail of the southbound track was 9 feet 3 inches. The distance from pole "12" to the east rail of the southbound track was therefore 4 feet 1 inch. He further said that on May 12, 1949 he stepped off the distance between the point where Butler indicated the streetcar was when Butler first saw the deceased and the spot where Butler indicated the deceased was struck and that distance was 23 strides, each of a length of 3 feet.

Therefore the only eye witness who testified said when he first saw the deceased he was 15 feet from the streetcar which was traveling between 25 and 30 miles per hour. In another statement, as herein recited, taken outside of court he had said that the distance was 69 feet and the speed between 30 and 35 miles per hour. Of course before a person killed in an accident can be declared to have been guilty of contributory negligence as a matter of law, we should consider the presumption that he exercised ordinary care for his own safety in accordance with the natural instinct of human beings to guard against danger. *Davidson Transfer & Storage Co. v. Baltimore Transit Co.*, 183 Md. 263, 273, 37 A. 2d 326; *Baltimore Transit Co. v. State, use of Castranda*, 194 Md. 421, 71 A. 2d 442. There is evidence in this case that it was possible to see from Stop 12 a long distance north.

However for the purpose of the contributory negligence prayer we will assume without deciding that there is any sufficient evidence to that effect, that just before Butler saw the deceased the latter looked to the north and saw the lighted southbound streetcar coming at a speed of from 25 to 30 miles an hour at a distance of 69 feet. He then walked slowly, without looking up, one step to the east rail of the southbound track and on the tracks, 5 feet 2 inches apart, directly in front of the streetcar. He was hit by the front right corner of the car and killed. As herein before stated the distance from the "12" pole, from behind which Butler said the deceased stepped, to the west rail, which was the farthest rail of the track, was a distance of 9 feet 3 inches. If the deceased walked slowly, we will presume 3 miles per hour, it took him over 2 seconds to walk the 9 feet to safety. If the streetcar was traveling at the rate even of 25 miles per hour it did not require 2 seconds to travel the 69 feet. A collision was inevitable at the point where the track was of T rail construction and where there were no traffic signals. *Crawford v. Baltimore Transit Co.*, 190 Md. 381, 58 A. 2d 680. *Gross v. Baltimore Transit Co.*, 192 Md. 278, 64 A. 2d 147.

We are of opinion that the deceased was guilty of contributory negligence as a matter of law, even if we assume without deciding, that there was primary negligence on the part of the appellee. As was pointed out in *Crawford v. Baltimore Transit Co., supra,* the duty was on the deceased to look not only before he crossed the tracks but to keep looking until the real point of danger was reached.

In the case of *Phillips v. Baltimore Transit Co.,* 194 Md. 527, 71 A. 2d 430, the pedestrian when near the crossing saw a streetcar coming fast, 35 or 40 miles an hour. At that time the streetcar was 35 or 40 feet away from her. Without looking again she ran across in front of the car and was hit. There were no traffic controls at the scene of the accident. In that case in holding that the pedestrian was guilty of contributory negligence as a matter of law we pointed out that there is no right of way at a street crossing in favor of a pedestrian against a streetcar. "Both are bound to exercise reasonable care". *Consolidated Ry. Co. v. Rifcowitz,* 89 Md. 338, at page 341, 43 A. 762; *Watson v. Storrs,* 167 Md. 685, 175 A. 263, 264; *Girton v. Baltimore Transit Co.,* 192 Md. 671, 677, 65 A. 2d 329. 330, 331, 332. We quoted the following from *Girton v. Baltimore Transit Co., supra,* "Generally, when the driver of an automobile approaches a streetcar track at an intersection, he cannot assume that an approaching car will stop at the intersection, but he must pay attention to the approach of the car, and if he deliberately takes the risk of driving across the track in disregard of the danger of a collision, when a person of ordinary prudence would not take a risk under the circumstances, he is guilty of negligence." It was said in *Watson v. Storrs, supra,* "We have here a man leaving a place of safety and walking slowly a distance of 16½ feet to cross in front of a car which before he started he had seen approaching at a distance of only 65 feet." [167 Md. 685, 175 A. 264.]

The doctrine of last clear chance does not apply in this case. The deceased when he arrived 4 feet from the

easternmost rail of the southbound track was in a place of safety. The streetcar at that time was traveling from 25 to 30 miles per hour at a distance of 69 feet from the deceased. There was no reason for the operator to suppose that he would slowly walk directly in front of the streetcar. Even if we assume that the motorman thought he would slowly walk directly in front of the streetcar, it would have been impossible at that time for him to have stopped the car in order to prevent injury to Mr. Ridgway. The evidence shows it took the streetcar 109 feet to stop from the point of impact. *United Rys. & Electric Co. v. Kolken,* 114 Md. 160, 78 A. 383; *Baltimore & O. R. R. Co. v. Leasure,* 193 Md. 523, 69 A. 2d 248. *Phillips v. Baltimore Transit Co., supra.*

Evidence in this case shows that the streetcar was lighted and the motorman failed to draw the curtain back of him. Appellant at the trial attempted to offer in evidence a regulation adopted by Capital Transit Company requiring motormen to pull down the curtain back of them when operating at night. The court refused to allow this regulation to be offered in evidence and appellant assigns this refusal as reversible error. We having decided this case on the contributory negligence of the deceased as a matter of law, it is not necessary that we pass upon this evidentiary question here.

Appellant attempted to offer in evidence a letter written by Capital Transit's Special Assistant to the President to a Mr. William E. Fowler, who was in no way connected with this accident, in which the following was written: "After observing the operation of our cars crossing the pedestrian crosswalk [at Stop 12] they found no reason for making compulsory stop, as they do not feel this crossing is any different than any other pedestrian or road crossing on this line. They noticed that the operators slow down when passing this stop and are on the alert for any pedestrians who may be approaching our tracks." This letter was written March 10, 1949 long after the accident in this case and it is apparent that the observations were made by appellee

after this accident. There is nothing to show that these observations were made before that event. The accident may well have been the reason why the operators now slow down when passing Stop 12. In fact the letter states: "We have completed our investigation in connection with your report of February 16th." The letter was properly excluded from the evidence.

As herein before stated, Mr. Vollten testified that from the points designated by Butler, the distance between the streetcar and the deceased when Butler first saw him was about 69 feet. Vollten also testified that from points designated by Butler, the distance of the streetcar from the deceased when the brakes were applied was 16½ feet. Appellant objects because when this testimony was admitted the trial judge ruled and stated to the jury that this evidence was admitted only to contradict witness Butler and thereby impeach his testimony by attacking his credibility. It is not necessary that we pass on this objection because we have assumed that the disputed distance was 69 feet and under the doctrine of last clear chance have pointed out that the distance required to stop the car after the point of impact was 109 feet. As we find no error the judgment will be affirmed.

*Judgment affirmed, with costs.*