LEHMAN *v.* BALTIMORE TRANSIT COMPANY ET AL.

[No. 170, September Term, 1961.]

538

*Decided February 19, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Everett L. Buckmaster,* with whom were *Robert L. Mainen, George W. White, Jr., Samuel D. Hill* and *Buckmaster, White, Mindel & Clarke* on the brief, for the appellant.

*Frank X. Gallagher,* with whom was *George P. Bowie* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

After a jury in the Baltimore City Court had rendered a substantial verdict in favor of a sixty-three year old pedestrian for injuries sustained by him as a result of alleged negligence on the part of one of the defendants, who was the other defendant's employee, in the operation of a streetcar, the trial judge granted the defendants' motion for a judgment, *n.o.v.,* and the plaintiff has appealed.

At Walbrook Junction in Baltimore City, three streets converge. Clifton Avenue, fifty feet wide (all measurements hereafter mentioned will be approximate), runs almost due east and west. From a northwesterly direction and at about a thirty degree angle, Windsor Mill Road comes into Clifton; and also from a northwesterly direction, but from an angle of some seventy degrees, Garrison Avenue converges into the intersection just mentioned. Traffic in the intersection is not controlled by lights; there is a stop sign, facing east, on the northern side of Windsor Mill Road, thirty feet east of the eastern boundary of Garrison Avenue; a stop sign, facing east, in front of the waiting room close to Windsor Mill Road; and another facing southbound Garrison Avenue traffic almost in the middle of the intersection.

At the junction of these three streets and between Clifton Avenue and Windsor Mill Road, the appellee, The Baltimore Transit Company, owns a four-sided parcel of ground: its south boundary of 150 feet parallels Clifton Avenue; its east boundary of 41 feet is slightly west of, and parallel to, an extension of the west side of Garrison Avenue; the north line of 150 feet is roughly the southwestern boundary of Windsor Mill Road; and the fourth line joins the first and third lines, but has no bearing upon the issues herein involved.

Facing its eastern property line and fifteen feet therefrom the Company maintains a 20 by 40 foot waiting room, which has a "sidewalk" on the front and sides thereof. It also maintains four tracks for the operation of its streetcars in the bed of Clifton Avenue, which approach the waiting room and the

intersection from the east, and, shortly before reaching the intersection, veer to the northwest where they continue along the beds of both Windsor Mill Road and Garrison Avenue. The switches which determine whether a streetcar proceeds up Garrison Avenue or Windsor Mill Road are located in the intersection, 75 feet from the front of the waiting room.

The Company, in the regular conduct of its business, operates both streetcars and buses for the carrying of passengers for hire. On the day of the accident, the appellant had boarded a bus, which brought him easterly on Clifton Avenue and deposited him, safely, upon the southern sidewalk thereof, across the street from the waiting room. He had paid his fare and had received a transfer, entitling him to travel farther upon another bus, which would take him "downtown." He intended to board this bus by crossing Clifton Avenue to the north to the waiting room, going around the sidewalk thereof, and then proceeding northwesterly across Windsor Mill Road to the northwestern corner of Garrison Avenue and Windsor Mill Road, which was the regular stopping place for the bus he desired to catch. When he got to the northern tracks of the Company in Windsor Mill Road, he was struck by one of its streetcars, proceeding in a westerly direction, and seriously injured.

Lengthy and elaborate arguments relative to the question of primary negligence are contained in the briefs, but, as we view the case, it is unnecessary to determine that question; because we think, as did the learned trial judge, the plaintiff's own evidence clearly discloses that he was guilty of contributory negligence as a matter of law. Hence, we shall assume, without deciding, there was primary negligence on the part of the appellee, and proceed with the question of contributory negligence. When reviewing the correctness of the trial court's ruling in granting a motion for judgment *n.o.v.* for the defendant, the evidence must be viewed in the light most favorable to the plaintiff, all conflicts therein must be resolved in favor of the plaintiff, and we must assume the truth of all evidence and such inferences as may, logically and legitimately, be deduced therefrom, which tend to support the plaintiff's right to recover. And where the defendant

offers evidence to establish some fact or facts by way of defense, such evidence may be considered if the truth of the facts is conceded or undisputed, but not if such evidence is merely uncontradicted, when its truth is controverted. *Smith v. Bernfield*, 226 Md. 400, 174 A. 2d 53.

The plaintiff testified he reached a point in front of the waiting room on the walkway where he stopped for a short period of time; he intended to cross Windsor Mill Road to the bus stop mentioned above; he was aware that crossing this street necessitated his passing over both the eastbound and westbound tracks; while he was standing stopped on the walkway, he took a good look at the streetcar (about 75 feet east in the intersection), which was then at the switch point, where streetcars usually stopped, moving very slowly; he looked to his left, and not observing any traffic approaching from that direction, stepped off the walkway into the street; he "saw a few people cross [ahead of him] and [he] went after them"; after looking to his right once and seeing the streetcar, *he did not thereafter look to his right and he never saw the streetcar again;* he was struck as soon as he stepped on the westbound track of the Company (at a point, according to plaintiff's evidence, about 25 feet from where he had stepped from the walkway).

He offered two excuses for not again looking to his right after seeing a moving streetcar approaching from that direction: first, he thought the motormen customarily stopped and permitted pedestrians to cross over to the bus stop; and second, he thought the stop sign in front of the waiting room, facing east, required the operator of the streetcar to stop.

The plaintiff then offered the testimony of the defendant Walker, which had been taken by deposition, and several of the Company's employees; but none of this testimony was of material aid to his case. Walker stated he was the operator of one of the Company's streetcars on a clear day at about 12:30 P. M.; he approached the intersection from the east, and, when he arrived at the switch point which controlled the streetcars as to whether they proceeded on Garrison or Windsor Mill Road (this was the approximate location of the streetcar when seen by the plaintiff), he brought the car to a full

stop in accordance with company regulations; after observing that the switches were properly set, he proceeded slowly west on Windsor Mill Road on the northern set of tracks at about 5 miles per hour; he was looking straight ahead, but did not see the plaintiff until he was about 10 feet away walking across the southern set of tracks; he released the power on the car, but did not ring his bell nor apply his brakes due to the fact that the plaintiff had stopped and, apparently, was going to wait for the car to pass; however, when the car was some five feet from the plaintiff, he started to walk again and stepped directly into the path of the car; the witness then "jammed on" his brakes and brought the car to a stop in about eight feet, but not before it had collided with the plaintiff. This was the testimony of a party to the suit offered by an adversary party, and very little, if any, of it was contradicted. Cf. Code (1957). Article 35, Section 9; *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109; *Proctor Electric Co. v. Zink,* 217 Md. 22, 141 A. 2d 721.

The plaintiff also produced Edward Schroeder, another Company employee, who testified, in answer to questions propounded to him by plaintiff's counsel, that the stops made by the streetcars at the switches dividing Garrison streetcars from those proceeding on Windsor Mill Road "took care of the stop signs on both sides [the one on the northeast corner of Garrison and Windsor Mill Road, and the one in front of the waiting station]."[1] And the court instructed the jury "that the boulevard stop law has no application in this case," to which no objection is shown in the record; hence, little, if any, future reference to the stop sign in front of the waiting station will be necessary.

---

1. Incidentally, this statement was confirmed by the chief investigator of the Department of Transit and Traffic, a witness produced by the defendant, who stated the pattern of stop signs at the intersection indicates that, in a sense, Garrison is a through, or boulevard, street; the stop sign at the northeast corner of Garrison and Windsor Mill Road has a supplemental sign just above the stop sign, permitting a right turn into Garrison without stopping; the stop sign in front of the waiting station is a "far side indication" supplementing the stop sign just mentioned, placed there mainly for "visibility purposes," which does not require an additional stop.

It is well-established law that in the situation described above in some detail, because of the appellant's contentions, neither the pedestrian nor the streetcar had the right of way; both were bound to exercise reasonable care. *Phillips v. Baltimore Transit Co.*, 194 Md. 527, 71 A. 2d 430; *Girton v. Baltimore Transit Co.*, 192 Md. 671, 65 A. 2d 329; *Watson v. Storrs*, 167 Md. 685, 175 A. 263. And there are a spate of Maryland decisions relating to the question of contributory negligence as a matter of law by pedestrians and others, who attempt to cross steetcar tracks without taking reasonable and proper precautions; it will only be necessary to refer to a few. It is elementary that the law requires a person to exercise reasonable care for his own safety and protection, under the surrounding circumstances. And included in this requirement is the duty to utilize the senses with which he has been endowed, especially those of seeing and hearing. When the appellant left a place of safety and, with utter disregard of the personal danger involved, proceeded, without again looking to his right, out to, and crossed, the Company's tracks upon which he had just observed a moving streetcar, it was most regrettable, but, in the law, it was inexcusable. Of course, contributory negligence, like primary negligence, is a relative term and must be determined from the facts in each particular case. However, the plaintiff's lack of care in the instant case was so distinct, prominent and decisive that ordinary minds would not, we think, differ in declaring it to be negligent; hence we hold that it constituted contributory negligence as a matter of law.

The *Phillips* case, *supra*, (194 Md. 527) was somewhat similar factually to the case at bar. There the plaintiff, while walking south in an intersection, saw an eastbound streetcar of the transit company about 40 feet away approaching her. She said she thought it was going to stop to take aboard passengers, and, therefore, she did not look again to her right, before attempting to cross in front of the car, which struck her during the attempt. In holding that the plaintiff had been contributorily negligent as a matter of law, the Court said, " * * * it was the duty of [the plaintiff] to watch the street car she saw approaching and not assume that it would stop for passengers."

Again, in the *Watson* case, *supra,* (167 Md. 685, 175 A. 263) the Court held a plaintiff guilty of negligence as a matter of law when he leisurely proceeded to walk into the path of a well-lighted streetcar. See also *Doble v. United Rwys. & Elec. Co.,* 155 Md. 343, 142 A. 106; *State, Use of Ridgway v. Capital Transit Co.,* 194 Md. 656, 72 A. 2d 245; *Crawford v. Baltimore Transit Co.,* 190 Md. 381, 58 A. 2d 680.

The appellant's contention relative to the doctrine of last clear chance, which he attempts to raise for the first time on appeal, is not properly before us for determination. Maryland Rule 885.

*Judgment affirmed, with costs.*